```
 1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
 2                           SOUTHERN DIVISION

 3     UNITED STATES OF AMERICA,      )
                                      )
 4              vs.                   )   CRIMINAL CASE NO.
                                      )   8:19-cr-00545-DLB
 5     DARRYL COLTON FRAZER,          )   8:12-cr-00047-DLB
       Defendant.                     )
 6     _____       )

 7                          THURSDAY, MARCH 9, 2023
                                 Courtroom 4B
 8                             Greenbelt, Maryland

 9                         TRANSCRIPT OF PROCEEDINGS
                               SENTENCING & VOSR
10              BEFORE THE HONORABLE DEBORAH L. BOARDMAN

11
       For the Government:
12
       Adam K. Ake, Esquire
13     Patrick D. Kibbe, Esquire
       US Attorney's Office
14     6500 Cherrywood Lane, Suite 200
       Greenbelt, MD 20740
15
       For the Defendant:
16
       Michael E. Lawlor, Esquire
17     Adam C. Demetriou, Esquire
       Brennan, McKenna & Lawlor, Ctd.
18     6305 Ivy Lane, Suite 700
       Greenbelt, MD 20770
19
       Also Present:
20
       Edwin Encarnacion, US Probation Agent
21
           _____
22
                 (Computer-aided Transcription of Stenotype Notes)
23
                 Reported by: Amanda L. Longmore, RPR, FCRR
24                   Federal Official Court Reporter
                    101 W. Lombard Street, 4th Floor
25                   Baltimore, Maryland  21201
                            410-962-4474
```

```
1                        P R O C E E D I N G S

2

3        (Call to Order of the Court.)

4              THE COURT:  Will the Government please call the case,

5   and everyone can have a seat.

6              MR. AKE:  Thank you, Your Honor.  Your Honor, we're

7   here in the matter of United States of America versus Darryl

8   Colton Frazer, Criminal Numbers DLB-19-545 and 12-047.  We're

9   here for sentencing on the instant case 19-545 and for a

10  violation of supervised release hearing on 12-047.  Adam Ake

11  and Patrick Kibbe for the United States.

12             THE COURT:  Okay.  Good afternoon to both of you.

13             MR. LAWLOR:  Good afternoon, Your Honor.  Michael

14  Lawlor.  With me at counsel's table is Adam Demetriou, and to

15  my right, Your Honor, is Darryl Fraser present for sentencing.

16             THE COURT:  Okay.  Good afternoon to all of you, and

17  I think I see Mr. Frazer's family or friends.

18             MR. LAWLOR:  Yes.  That is his mother and his twin

19  sister and his aunt, Your Honor.

20             THE COURT:  Okay.  Good to see you all.  Thank you

21  for being here.

22        Okay.  This case was transferred to me after Judge Grimm

23  retired.  On November 3rd, 2022, a jury found Mr. Frazer guilty

24  on Counts 1, 2, and 4 of the Second Superseding Indictment.

25  One charged him -- well, he was found guilty of conspiracy to
```

1   distribute and to possess with intent to distribute controlled
2   substances and possession with intent to distribute marijuana.
3   Actually the controlled substance was marijuana, correct, in
4   the first count?
5           MR. LAWLOR:  Yes, Your Honor.
6           THE COURT:   And then possession of a firearm after
7   having been convicted of a crime punishable by imprisonment for
8   a term exceeding one year, Count 4, which he stipulated to,
9   correct?
10          MR. LAWLOR:  That's correct.
11          THE COURT:   All right.  Presentence report has
12  been -- actually, no, he was acquitted of the 924(c) count,
13  possession of a firearm in furtherance of a drug trafficking
14  crime.  Let's see.  At the time of the offense Mr. Frazer was
15  on supervised release in another case that was transferred to
16  me recently.  That was for a federal firearm conviction here in
17  federal court.  And a petition on supervised release was filed
18  on August 2nd, 2019, in that case, and it alleged that he was
19  charged with these crimes in Montgomery County and was arrested
20  with them.  The convictions in this case violate his terms, his
21  conditions of supervised release, one of which was to not
22  violate any federal, state, or local law.  He's now been found
23  in violation of a federal law.
24      So Mr. Lawlor, unless you'd like to be heard on that, is
25  there any basis in which I can't possibly find him in violation

Sentencing 3/9/23

1    of supervised release?

2              MR. LAWLOR:  No, Your Honor.  And he's prepared to

3    admit to being in violation of supervised release.

4              THE COURT:  All right.  Okay.  Based on the

5    convictions and his admission and certainly a stipulation to

6    Count 4 at the very least, the conduct would giving rise to the

7    conviction at Count 4, I should say, I find that he has

8    violated his supervised release, I revoke supervision, and he

9    will be sentenced on that violation today.

10         Anything from the Government's perspective to add on that?

11             MR. AKE:  Unless Your Honor wants to talk about the

12   guidelines on that particular --

13             THE COURT:  Not yet, just the revocation part.

14             MR. AKE:  No, Your Honor.  Although -- yeah, I don't

15   think he needs to formally admit under advisement in a --

16   allocute in a normal plea colloquy.

17             THE COURT:  I don't think so either.

18             MR. AKE:  Yes, Your Honor.

19             THE COURT:  All right.  Thank you.  Okay.  Let's turn

20   now to the Presentence Investigation Report.  I reviewed it at

21   ECF 79.  Has the Government reviewed it and do you have any

22   additions or corrections?

23             MR. AKE:  No, Your Honor.  We fully agree with both

24   the content as well as the guideline calculations and the

25   criminal history calculations.

1      THE COURT:  Okay.  Thank you very much.  Mr. Lawlor,

2   I read your -- let me first state for the record I read the

3   Government's submission, I read your submission, including the

4   letters from his family, his sister, his friend, and of course

5   his letter which we'll talk about later.  So in your

6   submission, Mr. Lawlor, I see you object to the guidelines

7   calculation.  Let's first start with -- other than guidelines,

8   do you have additions or corrections to the presentence report?

9      MR. LAWLOR:  No, only the guidelines issues, Your

10  Honor.  And if the Court will permit, Mr. Demetriou is going to

11  address the guideline issues if the Court wants to hear

12  argument on that, and I'll be addressing the 3553 factors.

13      THE COURT:  Okay.  Very good.  So the only objection

14  to the guidelines from Mr. Frazer's perspective are the

15  guideline calculations.

16      Let's start with the base offense level.  I'm on Page 6 of

17  the presentence report.  The presentence report says there

18  should be a base offense level of 24 under United States

19  Sentencing Guideline 2K2.1(2) because Mr. Frazer committed the

20  instant offense after two felony convictions in Montgomery

21  County Circuit Court, one for Maryland robbery and the other

22  for assault first degree.  I think there's no dispute that the

23  first-degree assault conviction qualifies as a crime of

24  violence; is that correct, Mr. Demetriou?

25      MR. DEMETRIOU:  That is correct, Your Honor.

1        THE COURT:  All right.  And so what is your argument

2   on the Maryland robbery conviction?  Are you relying on the

3   District Court case out of DC from last summer?

4        MR. DEMETRIOU:  Certainly, Your Honor, we are relying

5   on the Supreme Court's decision in Borden, which Judge Walton

6   incorporated into his thorough analysis in the redacted case

7   that we cited, and also as the Government cited on Page 5 of

8   their sentencing memo, there are two recent proceedings from

9   other judges of this district that have addressed the issue.

10  They've certainly come down on the opposite side of what we

11  would hope that the Court would find, but I'll just sort of

12  incorporate those transcripts by reference.  I know the

13  Government referenced them in their memo.

14       One proceeding was before Judge Gallagher.  That's in the

15  case of United States versus Evans, the Case Number

16  19-cr-505-SAG, and that was a sentencing proceeding on January

17  4th, 2023; and then also there was a more recent proceeding

18  before Judge Bennett, and that is in the case of United States

19  versus Wells, the Case Number is RDB-10-665.  That was a

20  hearing on violation of supervised release that took place on

21  January 31st, 2023.  So we would also incorporate, I know the

22  Court has had a chance to look at those transcripts, the Court

23  asked about them, we would incorporate the arguments of our

24  friends at the Office of the Federal Public Defender on that

25  point, and I certainly won't belabor the point here, but just

1    briefly to state for the record, our position is that the

2    enhancement under 2K2.1(a)(2) does not apply because the

3    robbery conviction at Paragraph 33 of the presentence report

4    doesn't count as a guidelines crime of violence.

5        As the Court obviously knows, 2K2.1 incorporates the

6    definition of crime of violence in 4B1.2, a provision of the

7    career offender guidelines.  In the Borden case from 2021 from

8    the Supreme Court, the plurality of the court held that

9    criminalizing -- offenses criminalizing reckless use of

10   physical force do not constitute violent felonies under the

11   ACCA.  And obviously under Fourth Circuit precedent, in the

12   Fourth Circuit you look to sort of interpretations of whether,

13   you know, offenses constitute violent felonies under the ACCA

14   to see whether they would also constitute violent felonies

15   under the guidelines.  And for that I cite United States versus

16   Drummond, 925 F.3d 681, 694.

17       And so Your Honor, again, not belaboring the point, but as

18   Judge Walton pretty thoroughly set forward in the redacted case

19   applying the Supreme Court precedent of Borden, Maryland

20   robbery can be committed by the reckless application of force.

21   Judge Walton cited to the Duckworth case, which is a state case

22   in Maryland, basically laying out sort of Maryland robbery as a

23   compound crime consisting of a larceny and then also a battery

24   or assault.  And it's also noted in that Duckworth case that

25   battery in Maryland can be committed by the reckless

1    application of force.  And so given that battery can be
2    committed by a reckless application of force and battery can
3    also be a component of Maryland robbery, we think that under
4    Borden, you know, Maryland robbery does not satisfy the
5    elements clause the definition of crime of violence.

6          And then just briefly addressing the authority certainly
7    relied on by the Government, the Government does cite on Page 5
8    of their memorandum the Johnson decision of the Fourth Circuit
9    from 2019, it's a published opinion, and also the Dickson
10   decision from 2022, an unpublished opinion.  And I would also
11   note that on this particular issue and addressing this specific
12   argument, those cases would not bind another panel of the
13   Fourth Circuit, nor would they bind this Court, and for that
14   proposition I'm citing United States versus Norman, 935 F.3d
15   232 at 240, which is basically standing for the proposition
16   that where an argument wasn't presented, briefed, argued,
17   raised, even if there appears to be precedent from a higher
18   court sort of on point, that would not bind another court in
19   terms of addressing that specific narrow issue.

20         And as Mr. Patel details extensively in the proceeding
21   before Judge Bennett, the issue of sort of the mens rea in
22   terms of the application of force for Maryland robbery was not
23   you know, presented in those cases.  So this Court certainly is
24   not bound to decide the case the same way and we would
25   obviously ask that the Court find that Maryland robbery does

1    not constitute a guidelines crime of violence.

2         And just briefly in terms of the enumerated offenses, we

3    would incorporate Judge Walton's sort of very thorough 50-state

4    survey.

5              THE COURT:   That's an understatement.

6              MR. DEMETRIOU:   Looking at, you know, sort of

7    concluding that Maryland robbery does not meet the generic

8    definition of robbery holding that I believe it's a majority of

9    the states that have addressed the issue have said that you

10   need more than reckless conduct in terms of the force required

11   for a robbery, and so that would be argument on the enumerated

12   offenses clause.

13             THE COURT:   Okay.   Thank you very much.

14        Mr. Ake, do you care to be heard on this?  I think what

15   I'm hearing is these are new arguments in light of Borden which

16   was decided after Johnson and they're arguing that there's an

17   entirely new way to approach an analysis of Maryland robbery in

18   light of this Borden case which says a crime committed

19   recklessly cannot be a crime of violence.

20             MR. AKE:   And I fully apprehend the argument, Your

21   Honor.  I am not going to repeat all the arguments that my

22   colleague and former appellate chief and now our criminal chief

23   Jason Medinger made before both Judges Gallagher and Bennett.

24   Those were ably presented in the briefs that we -- or at least

25   in the transcripts that we provided the Court.

1        I do take the same position and our office's position is
2   that Dickson and Johnson given even -- allowing that Johnson
3   predates Borden, Dickson does not and those are -- Dickson was
4   a case that found -- granted it's an unpublished case, but it
5   still held that under the force clause Maryland robbery counts
6   and that's -- as a crime of violence and that was in large part
7   deferring to what the Maryland Supreme Court says about its own
8   law.  And I think that like Jason Medinger said before -- when
9   he argued it that should count for something as well as
10  Maryland defining it as a crime of violence in their own
11  statute books.  That's obviously the deliberate step that the
12  state has taken.
13       I am -- I don't believe that Maryland's jury instructions
14  parse out an intent to commit a battery separate from an intent
15  to do a taking from someone else something of value.  So like
16  Dickson said, it's a specific intent, juries in Maryland have
17  to find that someone either used the threat of the force or of
18  some sort of battery or actually consummated a battery with the
19  purpose, the specific purpose of taking the property belonging
20  to another person to find the defendant guilty.
21       So I am not sure where recklessness finds any part in
22  Maryland robbery or how it could possibly be committed
23  recklessly.  Mr. Patel obviously sets up a counterfactual where
24  someone accidentally hits -- runs into somebody and
25  instantaneously comes up with the intent after doing so to

1   relieve them of their property.  If that's the best that they
2   can come up with in terms of how this could even potentially be
3   charged, I think that's very outlandish to say that that would
4   even be charged as robbery but much less how long you would
5   develop that intent after an accident and do it so
6   instantaneously, it's sort of beyond the pale of reality.

7       So for those reasons, Your Honor, we would ask that the
8   Court follow the -- at least the controlling precedent of
9   Dickson and Johnson in terms of finding that Maryland robbery
10  continues to be valid as a crime of violence under the force
11  prong, and they will certainly have every opportunity here to
12  appeal every decision that this Court makes and the Fourth
13  Circuit can take that up in this case or one of the other cases
14  probably already up on appeal that's going to consider that
15  issue.

16      But this District Court would be better poised to follow
17  the current precedent that's in the Circuit.  Now, whether or
18  not it's absolutely binding on this particular argument or not,
19  you know, I'm sure the Court can carve out and interpret that
20  to give it discretion to do so, but I would think that the
21  wiser course of action is to stick with the current precedent
22  and if circumstances change, then we'll certainly address it
23  afterwards.

24      THE COURT:  All right.  Thank you very much.
25      MR. AKE:  Thank you, Your Honor.

1          THE COURT:   All right.   Okay.   As everyone agrees,

2    I'm bound by Fourth Circuit precedent in United States versus

3    Johnson, 945 F.3d 174, a Fourth Circuit case from 2019, the

4    Fourth Circuit found that a conviction for Maryland robbery was

5    a violent felony under the Armed Career Criminal Act; and then

6    in Dickson, the Fourth Circuit held last year in an unpublished

7    opinion that Maryland robbery was a crime of violence under the

8    guidelines, the same guidelines that's being applied here.

9          I read the redacted opinion and I reviewed the relevant

10   portions of the transcripts in the other two cases in which

11   other judges of this court have ruled against the defendant on

12   this issue in light of Borden and the redacted case out of the

13   District of DC.

14         The very interesting analysis that Judge Walton did, I've

15   not seen a similar analysis in light of Borden, certainly not

16   in the Fourth Circuit.   At this point, I think the prudent and

17   I think really the only course of action I have right now is to

18   follow Fourth Circuit precedent on this.   The issue is

19   certainly preserved for appeal and if the Fourth Circuit thinks

20   that Borden changes the landscape on Maryland robbery and

21   whether it's a crime of violence under the guidelines or the

22   Armed Career Criminal Act, then we will follow that, but for

23   now, I overrule your objection and I find that the base offense

24   level is 24 because of the prior conviction for first-degree

25   assault and Maryland robbery.

1      The next issue is whether there is a four-level increase

2   for possession of a firearm and ammunition in connection with

3   another felony offense, which is the possession with intent to

4   distribute marijuana.

5      MR. DEMETRIOU:   Thank you, Your Honor.   And so the

6   argument here is that, like you said, the four-level

7   enhancement under United States Sentencing Guideline

8   2K2.1(b)(6)(B) does not apply.   Certainly have looked at the

9   Government's memorandum and just want to make an argument in

10  response to that.

11      Essentially the Government points to Application Note

12  14(B) which does state that in the case of a drug trafficking

13  offense in which a firearm is found in close proximity to

14  drugs, drug manufacturing material, or drug paraphernalia, that

15  the application of the enhancement is warranted because the

16  presence of the firearm has the potential of facilitating

17  another felony offense or another offense.

18      Our argument in response to that, Your Honor, is that that

19  application, though, is not controlling and the Court should

20  not apply it.   The application -- the guideline itself provides

21  for an enhancement if the defendant used or possessed any

22  firearm or ammunition in connection with another felony

23  offense.   The key language there is in connection with another

24  felony offense.   The application note takes a narrow subset of

25  cases, mainly drug cases, and says disregard the meaning of "in

1    connection with" and directs the Court to apply the enhancement

2    even if a firearm just happens to be present.  And the

3    application note is also contrary to binding Fourth Circuit

4    precedent.  The Fourth Circuit has held that the requirement

5    sort of in connection with is not satisfied if the firearm was

6    present due to mere accident or coincidence, and that's United

7    States versus Jenkins, 566 F.3d 160 at 163, a 2009 published

8    opinion of the Fourth Circuit.  So if, for example, in

9    connection with offense --

10             THE COURT:  Did you cite that case in your memo?

11             MR. DEMETRIOU:  We did not cite that case in our memo

12   because we were responding to the Government's, you know,

13   argument on the application note.

14             THE COURT:  Okay.  Tell me what it says.  And if you

15   could just speak a little more slowly for the court reporter,

16   that would be great.

17             MR. DEMETRIOU:  Sure.  That case, United States

18   versus Jenkins, says that the requirement that the firearm be

19   possessed in connection with another felony offense is not

20   satisfied if the firearm was present due to mere accident or

21   coincidence.  And so that's the Fourth Circuit not in a drug

22   case but interpreting United States Sentencing Guideline

23   2K2.1(b)(6)(B).

24             THE COURT:  So having the drugs and the gun found in

25   the same bag is an accident or coincidence?

1          MR. DEMETRIOU:  Well, our argument, Your Honor, is

2     that the application note doesn't apply because it's contrary

3     to the text of the guideline.

4          THE COURT:  No, I was listening to what you told me

5     Jenkins said.

6          MR. DEMETRIOU:  Yes.

7          THE COURT:  So I was asking, it's not a coincidence

8     that the -- the fact that the firearm and the drugs were found

9     in the same backpack is not a coincidence or accident?  Or is

10    it coincidence or accident?

11         MR. DEMETRIOU:  Are you asking specifically in this

12    case?

13         THE COURT:  Yes.

14         MR. DEMETRIOU:  I believe that that would be the

15    Government's burden to put forward evidence before the Court

16    that would support the enhancement.  It isn't our burden to

17    come forward to show that the enhancement doesn't apply.  We

18    have a legal argument that the Court should not apply the

19    application note because it's in contrast to and contrary to

20    the text of the guideline and also binding Fourth Circuit

21    precedent.

22         THE COURT:  I understand.  Okay.  I understand your

23    position.

24         So Mr. Ake, I realize this is not -- the standard is

25    different, it's preponderance, not beyond a reasonable doubt.

1    I also realize the language is different.  It's not in

2    furtherance of, which is 924(c), this is in connection with

3    he's just read to me from Jenkins.  What evidence do you have

4    to meet your burden of proof that this firearm was possessed in

5    connection with the marijuana, possession with intent to

6    distribute marijuana?

7              MR. AKE:  So Your Honor, and I apologize that we

8    didn't lay this out more thoroughly post-trial since you

9    weren't able to see the video evidence that was presented at

10   trial.  So body-worn camera footage from the arresting officers

11   showed that when they attempted to stop Mr. Frazer and his

12   codefendant Mr. Moore, they immediately started running away

13   from the officers.  Eventually they were located trying to get

14   into a second-story apartment.  They were seen up in a

15   stairwell.  Both of them at that point were carrying, we called

16   them satchels but kind of like -- almost like purses.  They

17   were -- had a strap around their shoulder and it was a bag that

18   they were carrying on their hips.  And both Mr. Moore and

19   Mr. Frazer had these on them at the time.

20        Mr. Moore was able to get away at that point and ran into

21   an adjacent woodline.  But Mr. Frazer immediately before he

22   was -- before the police approached him up on the second floor

23   landing, he threw the satchel into a courtyard in between these

24   apartment buildings.  And I think for me, the big factor is

25   that the -- so this -- or this little bag only contained a

Sentencing 3/9/23

1    digital scale, the marijuana separated into baggies, and this
2    loaded firearm.  And it was not only loaded, it was a round
3    chambered and there was -- the cocking hammer was back.  So
4    anything that would have disturbed, gotten into the trigger
5    guard or just had enough of an impact, it would have gone off.
6         I think the defense would have a much better argument
7    about accidental if the gun had been unloaded.  If the gun was
8    just there and didn't have any ammunition in it, it's much
9    weaker if it had ammunition in it, it was far, far weaker that
10   it was immediately ready to fire and in a position where it
11   could have gone off just from the bouncing off the ground.
12        THE COURT:  Can I just interrupt you for a minute?
13   What do I do about the fact that you're offering me your word?
14   Is that your evidence to prove this?
15        MR. AKE:  Your Honor --
16        THE COURT:  I wasn't the trial judge.  I don't
17   have -- I have no idea if you're -- I trust you, I believe you,
18   but I don't know that that matters.  It's your burden to
19   convince me that this applies.  You're pointing to trial
20   evidence which is --
21        MR. AKE:  Yes, Your Honor.
22        THE COURT:  You're telling me what it is but I didn't
23   see it.  What do I do about that?
24        MR. AKE:  Well, Your Honor, it was introduced both at
25   trial and it's been introduced in the record in the motions

1    hearing as well.  So Your Honor, and if you want to continue

2    sentencing to allow us to make a more full record for you to

3    consider, I'm certainly open to that.

4        I apologize, we're just kind of going with the normal

5    routine of relying on the evidence that's been introduced at

6    trial in terms of what we're presenting at sentencing.  So I

7    understand the Court's -- or the bind the Court is in as well

8    in this matter, so if a continuance would be helpful to the

9    Court, we could certainly do that.

10           THE COURT:  I'm not going to ask for a continuance.

11   It's your burden to prove it today.

12           MR. AKE:  Okay, Your Honor.

13           THE COURT:  All right.  Just give me a minute,

14   please.

15           MR. AKE:  Yes, Your Honor.

16           THE COURT:  All right.

17           MR. AKE:  I think we actually have some of this

18   evidence here if you want to see it.

19           THE COURT:  Sure.  If you have it, I'm asking for it.

20           MR. AKE:  Yes, Your Honor.

21           MR. LAWLOR:  Your Honor, can I step out for a moment

22   while he loads that up?

23           THE COURT:  I suppose.  Sure.

24           MR. LAWLOR:  I just wanted to get some more water.

25           THE COURT:  Okay.

1          MR. LAWLOR:  Can I have 30 seconds?

2          THE COURT:  Okay.

3          MR. AKE:  Do you mind if I play this?

4          MR. LAWLOR:  No.

5          MR. DEMETRIOU:  And what trial exhibit was this?

6          MR. AKE:  This was Exhibit 4.1.

7          THE COURT:  Okay.  Thank you.

8      (A video was played in the courtroom during which the

9  following occurred:)

10          MR. AKE:  Your Honor, it was a trial exhibit.  Now,

11  while this was being played, the officers had testified that

12  the audio came on 30 seconds after they started the video.

13  You've probably seen this before.

14      So in this -- this is one of two officers that was

15  responding to a plain clothes officer that had seen Mr. Frazer

16  and Mr. Moore walking in the Lockwood Apartment buildings and

17  had called for uniform officers to come approach them.

18  Mr. Moore had been a person of interest because he was

19  identified as a participant or somehow involved in a shooting

20  earlier that month.  So that's --

21          THE COURT:  That's the description of someone who was

22  involved in the shooting.

23          MR. AKE:  And he was wearing a bandage the first time

24  that this plain clothes officer had seen him.  So this was

25  about a week later that he saw them again and then asked these

Sentencing 3/9/23

1  other officers to come approach them since he was in plain

2  clothes.

3          THE COURT:  Okay.  Thank you.

4          MR. AKE:  So at this point the defendant and

5  Mr. Moore are forward of the bald officer there.  And this

6  officer that's wearing the body camera, Officer Jacobs, once he

7  comes around the corner he can't see them anymore, so he

8  figures they've really started running.

9          So that's Mr. Frazer that is climbing back up over

10 the rail.  At this point he still has the bag and then he just

11 threw the bag into the courtyard.  And another officer's going

12 to recover the bag here in a second here after.  So the officer

13 in the burgundy shirt is the plain clothes officer.  He goes

14 out, recovers the bag and finds the gun inside with the drugs.

15         (Video concluded.)

16         MR. AKE:  So Your Honor, additionally, we produced

17 evidence at trial with cell text messages that the defendant

18 had sent including one that was Exhibit 13.24 where Mr. Frazer

19 was communicating with an individual that he had in his

20 contacts as "African Mike" and he -- at one point they -- the

21 conversation switches to getting a gun.  African Mike sends the

22 picture of a long gun to Mr. Frazer and Mr. Frazer responds "I

23 want something I can walk around with."  And this is about nine

24 days before the arrest.

25         I've got also arrest photos of the gun inside the bag, if

1      that would help the Court at all.

2            THE COURT:  I'll see the picture of what's inside the

3      bag if you have it.

4            MR. AKE:  Yes, Your Honor.  So exhibit -- Trial

5      Exhibit 6.1 showed -- this was the bag itself and then 6.2 was

6      a photo taken afterwards of the gun inside.

7            THE COURT:  I'm sorry, I didn't see inside the bag.

8            MR. AKE:  I'm not sure if -- it's been a while since

9      I've touched these.  So 6 -- that was the -- so 6.7 -- I

10     believe that I don't know if they actually took a picture of

11     the gun inside before they removed it, Your Honor.  These were

12     back at the station but the gun was located in -- this is a

13     pretty tight bag and they took pictures back at the station.

14           THE COURT:  All right.  Thank you very much.

15           MR. AKE:  Yes, Your Honor.

16           THE COURT:  Okay.  The question before me is whether

17     a four-level increase applies because Mr. Frazer possessed a

18     firearm and ammunition in connection with another felony

19     offense.  "In connection with" is not defined by the

20     guidelines.  The application note says "in close proximity to."

21           I think that Mr. Demetriou's reading of Jenkins, which I

22     have not read, certainly not recently, but I trust him to read

23     the holding, that the application -- excuse me, the guideline

24     does not apply if they were next to each other by accident or

25     coincidence.

1      Based on what I've seen, I don't see that they were next

2   to each other accidentally or coincidentally.  They seemed to

3   be next to each other for some sort of reason, and even if I

4   don't know what that reason is, I think that the possession of

5   a firearm by preponderance was in connection with the

6   possession with intent to distribute the marijuana.  I will

7   apply the four-level increase.

8      Okay.  I think then the issue is acceptance of

9   responsibility; is that correct?

10      MR. DEMETRIOU:  That's correct, Your Honor.  And so

11   Your Honor, we do believe that a two-level decrease should

12   apply under United States Sentencing Guideline 3E1.1(a).  Your

13   Honor, in this case Mr. Frazer did proceed to trial primarily

14   to preserve legal arguments on his motions to suppress, and

15   certainly at trial we did contest whether the Government could

16   meet its burden on certain legal theories related to the 924(c)

17   count, which we were correct, and then also whether the

18   conspiracy count was a massive overreach and we were correct.

19   Judge Grimm threw out two of the drugs that were originally

20   charged in the conspiracy at the Rule 29, and the jury, you

21   know, wholly rejected the Government's theory on that point.

22      And so really if you look at the heart of what this case

23   is, it's a gun and drug case.  The Government said in their

24   memo this is something that ordinarily would be charged in

25   state court.  This isn't a complicated case for this Court, and

1   so if you look at the trial record, we cited to the exhibit

2   record for Mr. Frazer's stipulation, Mr. Frazer admitted that

3   he picked up the gun and no one ever disputed and through

4   counsel admitted that he possessed the marijuana.  That is the

5   core of the conduct in this case and Mr. Frazer accepted

6   responsibility for that.

7         And I also think that the Court can consider the history

8   of the case.  We did note in our memo there were, after Judge

9   Grimm's very thorough, thoughtful ruling on the motions to

10  suppress over two days of hearings, you know, of course as in

11  any case there are discussions with the Government, Mr. Frazer

12  offered several times to enter into a conditional plea.  The

13  Government, as is its right, rejected that but that's not the

14  conduct of someone who is, you know, not accepting

15  responsibility for anything.

16        So our argument is that if you look at the core of the

17  case, it's a gun and drug case, he said he had the gun, he

18  stipulated to the count, and he said he had the marijuana.  And

19  we think that those factors are certainly, you know, consistent

20  with acceptance and even if the Court does not apply that

21  two-level downward adjustment, as Mr. Lawlor will address in

22  allocution, we think the Court can consider Mr. Frazer's

23  acceptance under the 3553(a) factors.

24              THE COURT:  Okay.  Thank you very much.

25        Mr. Ake, anything to add other than what's in your

1    submission?

2         MR. AKE:  Just briefly, Your Honor.  Our position is

3    still unchanged that that partially accepting responsibility is

4    not the same as accepting responsibility and he certainly

5    denied not only possessing a firearm with intent to

6    distribute -- or in furtherance of the drug trafficking which,

7    you know, they were rewarded and got an acquittal on but still

8    denied possessing drugs with intent to distribute so he only

9    stipulated to possessing -- not only possessing the drugs, not

10   with the intent to distribute, so did not accept

11   responsibility.

12        And with regard to the history of the plea negotiations, I

13   realize the Court generally doesn't want to get involved in

14   that, but Mr. Frazer rejected plea offers and even when we --

15   and I'm certainly -- I'm sure that defense counsel is very

16   frustrated as well, our office policy right now is not to

17   accept conditional pleas, but we did have discussions about a

18   stipulated facts trial where he could stipulate to the facts of

19   all the counts or certain counts and that was rejected as well.

20        So from the Government's perspective, he insisted on going

21   to trial because the offers that we were making he didn't want

22   to accept the time that was associated with those.  And so and

23   our starting point was not going to be less than what he'd

24   gotten immediately before.

25        MR. LAWLOR:  Objection, Your Honor.  Your Honor, I

1   think that getting into the level of detail that Mr. Ake is
2   about to get into is improper.
3          THE COURT:  I don't want to hear about the numbers of
4   pleas and --
5          MR. AKE:  Yes, Your Honor.
6          THE COURT:  -- I didn't even perceive what you were
7   trying to say, so don't think that I've been --
8          MR. AKE:  No.
9          THE COURT:  -- I didn't even --
10         MR. AKE:  But essentially he put the Government to
11  its burden of proof at trial and that's obviously his right to
12  do so but also disqualifies him from gaining acceptance of
13  responsibility credit under the guidelines.  Thanks.
14         THE COURT:  All right.  I've read the guidelines,
15  I've read the application note, and because the Government
16  was -- did have to put itself or did have to go to trial on
17  certain things, Mr. Frazer did not agree to every element of
18  every offense.  I will not give him a two-level acceptance for
19  responsibility, but I don't think that means he doesn't get
20  credit under 3553(a), which we'll talk about later.  But as far
21  as the guidelines go, I have to apply them as they're written
22  and I don't think they apply in this case even though this is a
23  pretty atypical case in which the defendant, Mr. Frazer,
24  admitted to having a firearm before the jury.
25         So that brings us to a total offense level of 28.

1    Mr. Frazer has said -- excuse me, 19 criminal history points.

2    That puts him Criminal History Category VI.

3              MR. DEMETRIOU:   Your Honor, I'm sorry to interrupt.

4    We did have another objection related to Paragraphs 33 and 34,

5    and that would impact the criminal history category, so that's

6    only why I interrupted.  Just in text in number of criminal

7    history points, not the ultimate finding of the Criminal

8    History Category VI.

9              THE COURT:   All right.  Is your position because he

10   was 16 and 17 years old respectively he should not receive

11   three points each?

12             MR. DEMETRIOU:   Yes, Your Honor.  And responding

13   specifically to what the Probation Office put in their response

14   to our objections, certainly at this point, you know, we do

15   object to United States Sentencing Guideline 4A1.2(d) applying

16   in this case.  Your Honor can see, but the conviction at

17   Paragraph 33, the robbery conviction, Mr. Frazer was 16, and in

18   terms of the lead count being second-degree assault in

19   Paragraph 34, Mr. Frazer was 17 years old.

20        Obviously the text of the guideline does say that those

21   convictions should count; however, as the Court well knows,

22   there is a line of Supreme Court precedent from Roper, Graham,

23   Miller, recognizing that in the criminal justice system

24   juveniles, even when tried and convicted as adults, are

25   different and the guidelines really do not recognize that

1   fundamental difference that the Supreme Court has reaffirmed

2   throughout the years.  And so, you know, we understand what the

3   state of Fourth Circuit precedent and the guideline is but we

4   do want to note an objection to that.

5              THE COURT:  All right.  Your objection is noted and

6   overruled.  Again, I have to apply the guidelines, and they say

7   to impose criminal history points for these convictions.  In

8   Paragraphs 33 and 34, even though Mr. Frazer was only 16 and 17

9   years old when they were imposed, but I think these are factors

10  I can consider under 3553(a).

11       So with that, the final guidelines for all counts of

12  convictions because the drug counts merge with the firearm

13  count and you take the higher of the -- the higher guidelines

14  calculation which is the gun charge results in 140 months to

15  175 months.  Mr. Ake, do you agree with that?

16             MR. AKE:  Yes.  On the instant offense, yes, Your

17  Honor.

18             THE COURT:  Right.  We haven't gotten to the

19  violation yet.

20       All right.  Mr. Demetriou, all of your objections are

21  preserved so I don't need you to agree with that, but at 28,

22  Category VI, the guidelines are 140 to 170 months.

23             MR. DEMETRIOU:  Yes, Your Honor.  That is what the

24  guidelines provide for.

25             THE COURT:  Okay.  And then the guidelines for the

1    violation of supervised release, this is a -- this was a Grade

2    A violation under Sentencing Guideline 7B1.1(a)(1) because it

3    involved conduct constituting a federal offense punishable by a

4    term of imprisonment exceeding one year.  That's a controlled

5    dangerous substances offense or involves the possession of a

6    firearm.  Criminal History Category, Mr. Frazer, at the time of

7    his prior conviction I believe was VI; is that correct?

8             MR. AKE:  Yes, Your Honor.

9             MR. DEMETRIOU:  Yes, Your Honor.

10            THE COURT:  All right.  So the range of imprisonment

11   would be 33 to 41 months under Section 7B1.4(a), but there's a

12   statutory maximum of two years because the prior crime or the

13   crime that he was on supervised release for was a Class C

14   felony, so the statutory maximum is 24 months.

15       Is that your understanding?

16            MR. AKE:  That's precisely it, yes, Your Honor.

17            THE COURT:  All right.  Mr. Demetriou?

18            MR. DEMETRIOU:  Yes, that's my understanding.

19            THE COURT:  Okay.  So those are the relevant

20   guidelines.  There are no financial aspects of the sentence.

21   There's no fine.  No one's requesting a fine.  Mr. Frazer can't

22   afford a fine.  There's no restitution.  There is I believe a

23   preliminary order of forfeiture for the firearm and the

24   ammunition; is that correct, Mr. Ake?

25            MR. AKE:  That's correct, Your Honor.

```
 1              THE COURT:  All right.  I'll enter that.  Any
 2    objection?
 3              MR. DEMETRIOU:  No, Your Honor.
 4              THE COURT:  All right.  There's a $100 special
 5    assessment for each count of conviction so for a total of $300.
 6         Are there any victims that wish to address the Court,
 7    Mr. Ake?
 8              MR. AKE:  No, no victims, Your Honor.
 9              THE COURT:  Okay.  Do you have a statement on behalf
10    of the Government?
11              MR. AKE:  Yes, Your Honor.  So in addition to -- and
12    just supplementing what we put in the papers, this is a very
13    frustrating case all around, Your Honor.  And I think the most
14    frustrating part of it for the Government is that Mr. Frazer
15    had just emerged from a lengthy 84-month sentence and six weeks
16    later is back in custody while dealing, you know, admittedly
17    low-level drugs and hustling, but very concerningly carrying a
18    loaded firearm and then attempting to dispose it very
19    recklessly while it was set to go off by throwing it into a
20    courtyard that had people in it.
21         And Your Honor, I acknowledge that the penalties that the
22    guidelines counsel and what the Government charged would
23    produce in terms of a sentence seems high and it is, but at the
24    same time, the immediate past conviction that Mr. Frazer
25    sustained was for exactly the same offense which was driving
```

1   the guidelines here which was is possession and that failed to

2   deter him for even a modest period of time after his release

3   from BOP from getting right back into antisocial behavior.

4         And we're really here because of Mr. Frazer's continued

5   behavior over time that just is not improving, and so in this

6   case, this is one where the need for specific deterrence is

7   very, very high, Your Honor, and I --

8         THE COURT:   I know but the question then is how much

9   will achieve specific deterrence?  I don't know that the longer

10  the sentence the more specific deterrence.  So that's the

11  tricky part here and then we've also got Mr. Moore's sentence.

12        MR. AKE:   I agree, Your Honor.  And while I would

13  differentiate in a couple ways, Mr. Frazer has a lengthier

14  criminal history.  It's certainly a lot more scores, certainly

15  been caught more often and certainly dealt with in terms of

16  sentences, and he was on federal supervised release and had

17  just come out of a lengthy BOP sentence, so already being under

18  the supervision of this Court.  And generally, you know, I

19  don't think every judge has this rule but I know certainly some

20  judges make it very clear that if you're back before me for the

21  same thing you're not going to get less time.

22        So I realize that he's not before back before Judge Motz

23  again, but I would expect that it doesn't send a good signal in

24  terms of general deterrence if subsequent convictions, the

25  exact same crime, the same court garners a lesser sentence.  So

1    I would recommend that as the base starting point.

2         We do recommend certainly a guideline sentence given that

3    this went to trial consistent with our office policy.  You

4    know, you're free to exercise your constitutional rights but,

5    you know, you're going to get less generous terms if you don't

6    accept responsibility and you go to trial.

7         So you know, I share your -- I understand the difficult

8    position you're in because obviously there's a lot of factors

9    at play here, but those are the ones that are paramount to the

10   Government in terms of making sure that we're consistent, we

11   send a message about recidivous conduct, particularly when it's

12   recidivism in the federal system, as well as making sure that

13   we do everything we can to specifically deter this particular

14   defendant.  And essentially, and I think protecting the

15   community plays some part larger than in many cases in this

16   case just because of the continued bad decisionmaking that

17   Mr. Frazer's engaged in over time.

18        So for that reason, Your Honor, we suggest a sentence at

19   the middle of the guideline range for both of these, but we'll

20   certainly defer to the Court on where it comes out based on --

21   that's why you get paid a lot more than me.  Thank you, Your

22   Honor.

23             THE COURT:  Thank you very much.

24             MR. LAWLOR:  Your Honor, I bet it's not that much

25   more.

1          THE COURT:  I was going to say that, too, but let's

2     focus.  This is important.

3          MR. LAWLOR:  Mr. Ake's been there for a long time.

4          THE COURT:  This is important.

5          MR. LAWLOR:  So Your Honor, I understand and

6     appreciate Mr. Ake's argument, and I submit that in some ways

7     it has appeal when you look at someone who has a guideline

8     range of 140 to 175 months who just got out of jail and is

9     reoffending, who has 19 criminal history points and a base

10    offense level of -- I guess 28 is where we ended up.

11         Like I said, I certainly wouldn't say that Mr. Ake is

12    being outlandish in the arguments that he presents to the Court

13    in support of what he perceives to be a reasonable sentence.

14    But I do believe that his argument is wrong, for some reason

15    sort of baked into the guidelines disparity, and I do want to

16    talk about how we got to a level 28, although we just argued

17    that, and Mr. Frazer's, you know, willingness to accept

18    responsibility which is far more than you're going to see in an

19    average case.

20         So Your Honor, let me start with the guidelines, and I

21    won't belabor this because we just discussed all this but, you

22    know, to get to the level 28 in part is because his base

23    offense level just for mere possession of the gun is a 24 in

24    part because he committed a robbery when he was 16 years old.

25    So there is the double counting that goes on here, Your Honor.

1   He's a Criminal History Category VI in part because of that

2   robbery and instead of being either a 14 or a 20, he's now a 24

3   because of an incident that occurred, again, when he was 16

4   years old.

5        And Your Honor, again, he's got 19 criminal history

6   points.  That's a lot.  It's awe-inspiring in some respects.

7   But he has three points from a conviction he obtained at the

8   age of 16, three points for a conviction that he incurred when

9   he was 17, and three points for a driving offense when he was

10  not much older than that.

11            THE COURT:  Well, a little more than a driving

12  offense, but I understand.

13            MR. LAWLOR:  Well, it's reckless driving.  I mean, by

14  its very nature it's a driving offense.  I mean, I hear what

15  you're saying but, you know, I don't think you look at this

16  record and you can call Mr. Frazer a violent person.  He's got

17  a single first-degree assault conviction, the facts of which

18  are not able to be gleaned apparently from the underlying

19  records here.  And so I think that, you know, we talked about

20  factor creep usually in fraud cases, Your Honor, but I do think

21  this is a case where, when you look at the underlying conduct,

22  28 and VI does not seem to marry up with the conduct, nor does

23  140 to 175 points seem to marry up with the conduct.

24       I'm not minimizing what he did.  He had a gun and he's a

25  felon.  He didn't shoot the gun.  He possessed it.  He had

1  drugs.  He shouldn't have drugs because they're illegal.  But

2  it was 100 grams of a drug that is 93 percent legal now in this

3  country.  And so this is a different case than other cases.

4  His Criminal History Category VI is different than other

5  Criminal History Category of VI, and this base offense level of

6  28 is different than other base offense levels of 28.  And so I

7  think starting there, Your Honor, the guidelines really

8  overstate the offense.

9          And I want to talk about this acceptance, Your Honor,

10 because this wasn't a mere, I think I want to go to trial, put

11 the Government to its proof because I'm not sure I like the

12 plea.  You just saw a snippet of what was a contested motions

13 hearing, and this is the only reason the case went to trial is

14 because the very, I think, close nature of Judge Grimm's ruling

15 here.

16         And what happens is the police in Montgomery County see

17 Mr. Moore and Mr. Frazer doing nothing, walking down the street

18 in broad daylight.  Mr. Moore has a bandage on his arm.  And

19 just to be clear, the police don't believe that Mr. Moore has

20 been involved in a shooting.  They believe he's been shot.  So

21 they approach Mr. Frazer and Mr. Moore and accost them because

22 they want information about this crime and Mr. Frazer and

23 Mr. Moore take flight and Mr. Frazer has the bag and you hear

24 the officer pointing the taser at him saying, drop it, drop it.

25         Now, Judge Grimm ultimately found that he abandoned it

1     because -- I can't remember the precise ruling, but did he

2     abandon the property and it wasn't a byproduct of conduct by

3     the police seizure because he tossed it, and I'm not -- I will

4     go over Grimm's ruling on appeal, I'm not doing that now, what

5     I'm saying is that this was a very I think closely contested

6     and debatable issue that Judge Grimm ruled against us and

7     Mr. Frazer wants and wanted to see what an appellate court

8     would decide about it because he believes Judge Grimm got it

9     wrong.

10         And so he offered to enter into a conditional guilty plea.

11     I will plead guilty, I take whatever punishment, you know, the

12     parties agree to or some judge sees fit to impose, just give me

13     the right to appeal this.  And the Government, as is their

14     right, said no.  And then we went to trial where he said -- he

15     didn't say I possessed the gun.  He said I'm guilty of Count 4

16     and I possessed the marijuana.

17         He made two legal arguments.  One was that I did not

18     possess that gun in furtherance of a drug trafficking crime,

19     for which the jury agreed, and then he said I didn't possess

20     100 grams of marijuana with the intent to distribute it.  And

21     that was by way of legal argument.  There was no testimony put

22     on by the defense.  We, rather, argued to the jury that the

23     Government had not satisfied its burden of proving beyond a

24     reasonable doubt a single element of this case which was the

25     intent to distribute that 100 grams of marijuana.  He admitted

Sentencing 3/9/23

1    to possessing it, and he didn't just admit to possessing the

2    gun.  He admitted to each and every element of Count 4.

3        And so, Your Honor, I'd like to read what Judge Bennett

4    has said about the difference between, you know, going to trial

5    and getting cooperate -- or rather acceptance credit for that

6    and sort of punishing someone for going to trial.  And Judge

7    Bennett said, "There's a fine line between rewarding someone

8    for cooperating and punishing someone for going to trial.  No

9    defendant should ever be punished for going to trial.  I did

10   not consider in any way the fact that the Government was put

11   through a burden of going to trial.  Every defendant has a

12   right to go to trial.  And there is no jurisprudence in the

13   country to my knowledge that allows federal judges to penalize

14   people for going to trial.  So the fact that the Government is

15   put to its burden of going to trial is not a factor to me in

16   terms of what sentence should be imposed upon him."

17       And that's from the United States versus Chaidez-Meza,

18   Your Honor, and I can give you the ECF cite if you want that.

19   And I'm not -- I'm not saying the Court is about to punish

20   Mr. Frazer for electing to go to trial, but the fact that he's

21   being deprived of those points is in effect punishing him for

22   making basically two legal arguments in front of a jury, one of

23   which the jury accepted, on top of the fact that he was willing

24   to plead guilty if he could simply raise one issue on appeal.

25              THE COURT:  I understand.

1           MR. LAWLOR:  So I think, Your Honor, that -- you

2    know, I think the totality is -- the totality of that is that

3    the Government or rather the guidelines, Your Honor, are

4    inconsistent with the conduct and inconsistent with

5    Mr. Frazer's intentions in terms of his decision to go to

6    trial.

7           The second thing I want to talk about, Your Honor, is the

8    Court sort of noted the disparity in sentencing, and I have to

9    confess to being, as I stand here now, still befuddled by the

10   Government's request of 6 years for the same identical conduct

11   and 15 years for this based on the fact that he was on

12   supervised release.  Mr. Moore had a Criminal History Category

13   of V as far as I know, and the Government has repeatedly said

14   that this is a person they believed to be involved in murder.

15          And so now I suppose Mr. Moore's standing here being

16   sentenced for a 924(c) count because there was not adequate

17   proof of his involvement in those crimes and I don't want to

18   cast that aspersion on him, but these are statements made by

19   the Government in legal filings to this Court.  So how do you

20   stand there on day one and ask for 6 years and then stand here

21   on day two and ask for 15 years?

22          And more importantly, Your Honor, I think obviously within

23   3553(a), the Court is instructed to avoid disparate sentences.

24   And I don't think there are enough real differences, real

25   differences that suggest that a sentence three times as long is

Sentencing 3/9/23

1   just or warranted in this case when you consider two men walked

2   down the street, one has a gun, one has weed, the other one has

3   a gun, he has weed.  The police approach them, they both run.

4   One is named Mr. Frazer, one is named Mr. Moore.  That's the

5   only difference, their names.

6          THE COURT:  It's rare that you see such similarly

7   situated defendants with respect to conduct.

8          MR. LAWLOR:  Finally, Your Honor, the main thing, the

9   main thrust of my argument, Your Honor, is that -- and this is

10  why I reject even Mr. Ake's argument that a sentence less than

11  what Mr. Ake -- excuse me, what Mr. Frazer received from Judge

12  Motz is unwarranted because this is this sentence and this is

13  this time in Mr. Frazer's life.

14      And so, and Your Honor knows this because you practiced

15  not long ago, but when you were a defense attorney, you're in

16  the unique position of being the only person in the room who

17  really has a window into the person that you're advocating for,

18  what they're really like.  You know, I mean, like I said, if

19  you looked at this presentence report and you saw 28 and 19,

20  that's not a good look.

21      But what I want you to know about Mr. Frazer, Your Honor,

22  is that this is a different person than the one who got

23  arrested and this is a different person than the one who got

24  sentenced by Judge Motz.  And so, you know, obviously I've been

25  in this case for three years and that's mostly because of

1  COVID.  You know, we had a motions hearing I think during COVID
2  and then the trial couldn't go because of COVID.  So I've been
3  in this case for a long time.  And I recall a time when I
4  didn't understand why, where Mr. Frazer and I could not get
5  along, and it felt to me that he was just thrashing and I
6  couldn't understand why and now I do.  And it's two things,
7  Your Honor, or two primary things.
8      One is, and I think his letter and his words today will
9  better attest to this than anything I can say, you know, Your
10  Honor knows and statistics bear this out but as people age
11  their likelihood to engage in criminality decreases, and why
12  the reason is for that is somewhat obvious but somewhat hard to
13  define.  But Mr. Frazer, you know, I asked him two days ago, I
14  went to CDF before this hearing and said, why on God's green
15  earth would you be on the street two months after getting out
16  of jail with a gun, and he admitted candidly, I wasn't ready to
17  let the street go.  I wanted to be in the street.  I wanted to
18  party.  I wanted to hang with my boys.  I wanted to hang with
19  women.  And so that's where he was.
20      And now as the Court can see, Mr. Moore's [sic] station in
21  life has changed, not as a result of just the fact that he's
22  incarcerated and his situation's changed, but the fact that the
23  person he cares about most in this world is now without a
24  mother and a father because her mother was murdered.  And so
25  now Mr. Moore -- excuse me, Mr. Frazer, I'm sorry.  Mr. Frazer,

1   he has this realization, Your Honor, that it's not about him

2   anymore and he want to do two things:  He wants to go to work

3   and he wants to go home.

4       And the sad thing is, Your Honor, when he was released the

5   last time, he has a skill and he had a job so he was that close

6   to sort of fulfilling that but I guess the drive wasn't there.

7   He has learned the trade of being an electrician and he had a

8   job lined up.  And as you can see, he has people here in his

9   camp who will support him, you know, including the bond with

10  his twin sister which is greater than any other bond I think

11  for Mr. Frazer, other than the one with his daughter.

12      And so you know, again, Your Honor, I realize looking

13  plainly at this record that it paints a pretty dim picture, but

14  from my conversations with Mr. Frazer, my opinion is that, you

15  know, the switch has finally gone on or off, whichever way it

16  goes, when a human being who has been engaged in criminality

17  their entire life from the age of 13 finally decides that they

18  want a different path for themselves.  And the sad reality is

19  none of us has a crystal ball so to the degree you want to say,

20  well, I believe that, it requires, you know, an article of

21  faith.  But I hope that, you know, not my words but his words

22  will encourage the Court to accept that article of faith that

23  what Mr. Frazer has said to you in his letter and what he'll

24  say to you today rings not hollow, not as someone who's just

25  been arrested again, but someone who has really been through

1   meaningful change.

2        And I should say, as he has said, not just because of the

3   death of his child's mother, but Mr. Frazer had to spend 23

4   hours in a cell during a global pandemic at the worst place

5   probably, at least from the DMV where a person could be, which

6   was the DC jail, such that -- I'm sure Your Honor knows about

7   Judge Kollar-Kotelly getting involved there to make sure that

8   the conditions were improved because they were so lacking at

9   the beginning of the pandemic.  Aside from, you know, the fear

10  of illness or death and just the trauma that we all went

11  through during that time, there's the fact of being

12  incarcerated in a pretrial setting 23 hours a day not knowing

13  when or if you're going to get to trial because the courts are

14  closed during this, you know, sort of horrific time.

15       And so for Mr. Frazer, again, he said to me again, I'll

16  let him tell you, it's sort of he was honestly at the

17  crossroads where he felt like he was almost ready to give up

18  and break because there didn't seem to be much really left for

19  him.  He's back in jail, he's 23 in one, and even the things

20  external to his situation are going horrifically for him.

21       And so Your Honor, I do believe for a lot of different

22  reasons, you know, the presentence report and, like I said, the

23  dim view that his -- the dim view that it paints and, you know,

24  what Mr. Ake says which more often than not wouldn't ring

25  hollow, it would ring true, but I do think that this case is

1    not the exception but an exception for a host of reasons, Your

2    Honor.  But I do think that -- I think the disparity is

3    important.  I think the guidelines are important.  But at the

4    end of the day, you know, which I think Your Honor's primary

5    concern in most cases is to protect the public, and I just

6    submit to the Court as honestly as I can that this is not a

7    person who sits here today before you that the public needs

8    protecting from, that I think -- and this is also someone who

9    has not been, all right, you got arrested and it's six months

10   and here I am before another court.  It's been four years

11   pretrial, Your Honor.  Four years that he's had to actively and

12   actually think about his life before we've reached the day here

13   today where he can address the Court and tell you in his own

14   words where he is at in his life now.

15        I suggest to the Court that a sentence something proximate

16   to what Mr. Moore received is appropriate for all the reasons

17   that I've articulated, Your Honor.  And the last thing is I

18   just ask that you hear from Mr. Frazer and incorporate his

19   remarks into your ultimate decision.

20             THE COURT:  Okay.  Thank you very much, Mr. Lawlor.

21   Good afternoon, Mr. Frazer.

22             THE DEFENDANT:  Good afternoon, Your Honor.

23             THE COURT:  You've heard a lot of people talking

24   about you today --

25             THE DEFENDANT:  Yes, ma'am.

Sentencing 3/9/23

1          THE COURT:  -- as you sat there quitely.  As I'm sure

2    your lawyers have told you, you have an absolute right to speak

3    to me.  You also don't have to so don't feel compelled to, but

4    if you have something to say in addition to what was in your

5    very nice letter, I'd be happy to hear from you.

6          THE DEFENDANT:  Yeah, I wrote something down I would

7    like to say.

8          THE COURT:  Okay.  If you're not going to cover --

9    yeah, just take it off.  Thanks.

10          THE DEFENDANT:  Thank you.

11          THE COURT:  And I think you need to speak maybe

12    closely into the microphone.

13          MR. LAWLOR:  Would it be better if he sat?

14          THE COURT:  If you want to sit down, that would be

15    fine.  Thank you.

16          THE DEFENDANT:  All right.  First and foremost, I

17    would like to apologize to everybody.

18          THE COURT:  Speak slowly so the court reporter can

19    take everything you say down.

20          THE DEFENDANT:  I'm sorry.  I'm sorry.

21          THE COURT:  We all do it.

22          THE DEFENDANT:  First and foremost, I would like to

23    apologize to everybody, the courts, my family, and the

24    community I affected from my actions.  Since day one I've taken

25    full accountability for my actions.  We tried numerous times to

1   get a conditional plea to reserve my rights to appeal our
2   motion to no avail.
3        Today I'm not the same person I was in 2019, and I refuse
4   to live like that anymore.  Your Honor, a lot has transpired in
5   the last three and a half to four years.  The world has changed
6   tremendously and so have I.  Since my incarceration, the mother
7   of my child was murdered and I can't even describe a little bit
8   of the pain I have endured.  I'm sick and tired of being sick
9   and tired.  I've spent the majority of my life incarcerated.
10  I've been incarcerated more than I've been in society, and
11  that's a form of insanity.  I've been through so much, so many
12  nights of crying and beating myself up self-reflecting and
13  rebuilding.  I've been put on many different type of
14  medications due to my anxiety and my bipolar disorder that I've
15  got since I've been incarcerated.
16       I've had a long bought of addiction that I'm asking for
17  help for.  My daughter's out there with no mother or father,
18  and she needs me just as much as I need her.  I have no room
19  for mistakes or to be put back in this position.  I have a
20  moral right and matter to be a whole single father.  Being
21  there for my daughter again and active in her life is very
22  important to me.  I am a certified electrician.  I'm a
23  certified electrician and plan to pursue a career as one.  I
24  have a great support system and family members that love me and
25  are willing to help me be the best me at all times, especially

Sentencing 3/9/23

1    when times get tough for me.  I willing to take advantage of
2    any help and/or programs the courts have to offer me.  Please,
3    Your Honor, I'm begging, pleading and asking for another
4    chance.  Please, if not for me, for my daughter and her
5    siblings that I plan to help out with.
6          Your Honor, I'm sick and tired of being sick and tired.  I
7    have parents that are up there in age.  Like, the only thing, I
8    want to just get back out there and do the right thing to show
9    them that I got it that they can be happy before they pass
10   away.  Like, my sister, we haven't shared a birthday since I
11   was like 14.  We twins.  And like every time my birthday come
12   up it hurts because my sister's out there and she, like, you
13   not here with me.  And this is my twin.  We came out together.
14         Like, I'm sorry for all my actions.  I'm done.  I'm done
15   living the way I used to live.  I'm done with the old life.
16   I'm done with the friends.  I'm done with the streets.  My kids
17   is my friends.  They the ones I want to go home to and be
18   around and do the right thing for.  And I just ask you to
19   please have mercy upon me and give me another chance and be
20   lenient upon me.  I'm not saying -- I'm not saying don't give
21   me no time.  I understand the situation.  I know I messed up.
22   I made a mistake.  I'm just saying please have mercy upon me
23   and forgive me and be lenient upon me.  I take full
24   responsibility for my actions, and thank you.
25               THE COURT:  Thank you very much.  The gentleman that

1    walked in during the hearing, who is the gentleman in relation

2    to you?

3              THE DEFENDANT:   That's my first cousin and my nephew.

4              THE COURT:   All right.  Welcome.  Okay.  Just give me

5    a moment, please.

6              (Conference at the bench.  It is the policy of this
     Court that every guilty plea and sentencing proceeding include
7    a bench conference concerning whether the defendant is or is
     not cooperating.)

8

9              THE COURT:   All right.  I've been a District Court

10   Judge now for almost two years, and my colleagues have all told

11   me before I started that sentencing will be the hardest thing I

12   do.  So while your family and you are having the most difficult

13   day, this is not easy for me either.  And I appreciate the

14   Government acknowledging the difficult position that the Court

15   is in given the guidelines, given the nature of the offense,

16   given the variety of factors.

17        So Mr. Frazer and your family, I'm speaking mostly to you.

18   I have to follow a statute that's Title 18 of the United States

19   Code Section 3553(a) and that requires me to consider a variety

20   of factors to determine what is sufficient but not greater than

21   necessary to meet the goals of sentencing.  And the goals of

22   sentencing include deterrence, meaning deterring you and others

23   like you from committing a crime again or a similar crime

24   again; the need to promote respect for the law, to punish you

25   for this offense, to protect the public.  I think protection of

1    the public is one of the most important things that a judge is

2    obligated to do.

3        And among the other factors I have to consider and I do so

4    now are, and I'll start with your personal history and

5    characteristics because in every sentencing in federal court

6    it's very particularized to you.  I do have to look at what the

7    guidelines say and we will discuss that.  I need to look at

8    Mr. Moore's sentence and we'll discuss that.  But sentencing at

9    its heart is a very particularized endeavor.

10        So let me first start with what I've gleaned from you from

11    the presentence report, from your lawyers' submission and from

12    the presence of your family here.  From what I can tell, you

13    were raised in a loving family with your three sisters,

14    including your twin who's here.  You were given love, fed and

15    clothed and opportunities.  You graduated from Penny Branch.

16    Then you went to Tesst College in Beltsville.

17        So all of that, then your run into the criminal history

18    started quite young, so I don't know exactly -- I don't know

19    exactly what happened early on and why your sister went this

20    way and you went this way.  It's sort of remarkable here.  You

21    have your twin here who was born on the same day with you, and

22    she's here and you're here.  And I'm sure that hurts a lot.

23    I'm sure it hurts her and your parents.  And I can't explain

24    exactly what happened there, but it did.

25        I need to look at your employment history, your vocational

1   history.  Your employment history is limited because you've

2   been incarcerated so much.  I did see that you've engaged in

3   programming when you've been incarcerated, took the electrician

4   course and passed it, had an electrician job apparently lined

5   up when this offense happened and that's just incredibly

6   disappointing that you didn't follow through with that.  You

7   went right into the streets then, apparently.

8       I see that you've completed other programs while you've

9   been incarcerated, a contractor construction management

10  program.  So what this tells me is that you're capable of

11  working, you're capable of learning, you're capable of putting

12  your mind to something and completing it, but the

13  followthrough, the attention, the good judgment has been

14  missing.

15      It really struck me when you said that you spent more time

16  incarcerated than you have on the outside.  That is a very,

17  very -- I see your mother shaking her head, and I know that's

18  not what she wants for you.  That's just really -- if that

19  doesn't get you motivated to never do something like this

20  again, I don't know what will.  That's a pretty extraordinary

21  fact and I'm sorry about that.

22      You know, there are things I have to consider in your

23  background which wasn't discussed too much by the lawyers, but

24  I was struck by it in the presentence report and then by what

25  you told me is, to me, there seems to be a serious history and

1    problem with drug addiction, alcohol abuse, and gambling.

2    These are -- I mean, there's PCP, marijuana, Percocets,

3    cocaine, liquor.  These are classic signs, in my view, of an

4    undiagnosed mental health disorder and it sounds like you have

5    been diagnosed with anxiety and bipolar.  I don't know if

6    you're receiving medication for that.  According to the

7    presentence report, it says you're not.  So I consider all of

8    those things when I try to fashion the appropriate sentence.

9         I need to consider your criminal history.  A lot has been

10   talked about your criminal history.  Three of your most serious

11   convictions occurred before you were 22; one when you were 16,

12   when one you were 17, and then another one when you were 19,

13   and then you had the firearm offense before Judge Motz in 2011

14   at 22.

15        So your criminal history is quite concerning to me but it

16   occurred at a time in your life when you were a teenager and

17   the brain is still functioning and judgment is often impaired,

18   the instincts are impulsive.  So while I don't discount it, and

19   I'm not minimizing it, I think that time has distanced you from

20   that and I think the statistics show that the older we get, the

21   recidivism rate and hopefully for violent crime certainly

22   decreases.

23        So you were 22 when you had the conviction before Judge

24   Motz, and now I think you're 34?

25               THE DEFENDANT:  Yes, ma'am.

1       THE COURT:   34.   Of course I have to consider the

2   nature and seriousness of the offense.   I think the Government

3   is right, it's very troubling that within a month, weeks maybe

4   of release from federal prison you had a firearm again and you

5   had just been released for having a firearm and the fact it was

6   loaded and you were in a neighborhood is very concerning there

7   was a potential for violence there.

8       I do also consider, on the other hand, the firearm was in

9   a satchel as opposed to in your dip or in your hand and that

10  you didn't use it, you didn't point it at anyone.   I have to

11  make those factual distinctions to particularize this case and

12  the seriousness of the offense, which it is quite serious and

13  it deserves punishment.   And of course possession with intent

14  to distribute marijuana is a violation of federal law, as you

15  know now.

16      I focus significantly on what's happening most recently in

17  your life.   You've been incarcerated for almost four years.

18  During that time period, I believe you when you tell me in your

19  letter, which I really appreciated and I believed, when you

20  tell me in your letter and you tell me here today that you've

21  done a lot of thinking over the past four years of

22  incarceration that you've changed your mindset.   I do believe

23  that the murder of your daughter's mother, which is

24  unbelievably tragic that occurred while you were incarcerated,

25  I do believe that's had a profound impact on you and hopefully

1    telling you what's important and what you need to do, which is
2    to focus on your family and yourself and your responsibilities.
3    You now have a daughter whose mother is gone.

4        I also do believe that you should get some sort of credit
5    and diminution in a sentence because of the harsh pretrial
6    detention conditions during the pandemic particularly at CDF or
7    the DC jail.  I said the same thing to Mr. Moore two days ago
8    and I believe that.  That was really hard time to spend without
9    any programming, without any treatment, and under the stress of
10   the pandemic, I don't think that should be understated.  That
11   takes a very hard psychic toll on people.  And you may not even
12   realize it.

13       And finally, among the very strong reasons for my sentence
14   is your acceptance of responsibility.  While I was unable under
15   the guidelines to reduce your guidelines by two points, I don't
16   really agree with that.  And I had to apply them, I will, but I
17   think as a policy matter, this situation is pretty unique in
18   that it seems to me you wanted to challenge the legality of the
19   search, you did that, you lost your motion to suppress, you
20   wanted to have a conditional plea.

21       If that's the Government's position, that's their
22   position, but I have to consider your willingness to not go to
23   trial, and my understanding is you didn't really want to go to
24   trial.  You wanted to plead guilty and just preserve your right
25   to appeal a constitutional issue, which is exactly what the

1   application note that I relied on says would give you

2   acceptance points, which you weren't able to do that because of

3   the US Attorney's policy.  So I don't think that's fair to you.

4   I don't think that -- I think your sentence should be reduced

5   because you were willing to plead guilty and wanted to preserve

6   your right to appeal.

7        I also credit the fact that you stipulated to being guilty

8   to one of the counts.  It's pretty extraordinary.  We don't see

9   that very much.  You agreed that you were guilty of Count 4, so

10  I credit you for that.

11       And I believe I generally subscribe to the Bennett

12  philosophy that people shouldn't be penalized for going to

13  trial.  That's not to say that people who don't go to trial

14  shouldn't get super acceptance for responsibility but

15  penalizing people for going to trial is not something that I

16  think is appropriate.

17       So for all of those reasons, I will impose my sentence,

18  first for Counts 1 and 2 and Count 4 and then discuss the

19  violation of supervised release.  So for all of those

20  reasons -- well, let me back up.  The guidelines, we have to

21  talk about that, of course.

22       I think the guidelines are way too high in this case.  I

23  think that they don't reflect the nature of the offense.  I

24  don't think they reflect who you are today.  I don't think they

25  reflect this incredible family support that's here.  That's one

1    of the most important things that I as a judge look to is what
2    the life going to be like when you're out, do I have to worry
3    that you are going to harm someone in the public after I've
4    released you.  And I am comforted by the fact that your mindset
5    seems to be changed, that you are getting older.  You're going
6    to be certainly older by the time you get out and you've got
7    this incredible family support and they took the time to write
8    heartfelt letters and they're here today.  So that is very
9    significant to me.
10         I also have to consider, and I just want to get all my
11   reasons out before I get to the sentence, unwarranted
12   sentencing disparities between similarly situated
13   codefendants -- or, defendants, I should say, or individuals.
14   And this is a very unique case in which we have virtually
15   identical criminal activity.  There might be some nuances and
16   differences the Government may argue, but virtually identical
17   activity, and I think the Government is right that Mr. Moore's
18   criminal history is not as extensive as yours and not as
19   serious as yours, but you have a significant criminal history,
20   too.  And he was given a sentence of five years and one day
21   pursuant to a C plea, essentially a five- to six-year C plea.
22         Mr. Moore unfortunately doesn't have the family support
23   that you have.  He didn't have a showing like this.  He
24   didn't -- there wasn't, frankly, I think the Government would
25   agree, a similar comfort in knowing that there is a structure

1    for you when you're released.  So I have to avoid unwarranted
2    disparities between you and him.
3         I also think that the guidelines do double count criminal
4    history in this case.  We have a 24 base offense level by
5    virtue of a robbery and then you've got points for the robbery
6    but you've got a lot of points so I'm not really sure how far
7    that gets you.
8         So for all of those reasons, I find that the sentence
9    that's sufficient but not greater than necessary on Counts 1
10   and 2, the marijuana conspiracy and possession with intent to
11   distribute charges is six months each to run concurrent with
12   each other.  On Count 4, felon in possession of a firearm, 72
13   months to run concurrent with Counts 1 and 2.
14        We now turn to the violation of supervised release.  When
15   fashioning an appropriate revocation sentence on supervised
16   release, the Court should sanction primarily the defendant's
17   breach of trust while taking into account to a limited degree
18   the seriousness of the underlying violation and the criminal
19   history of the violator.  That's from United States versus
20   Pennington, 2022 Westlaw 2702577 at 1, Fourth Circuit, July
21   12th, 2002.
22        I have to consider the same factors I just considered but
23   the Fourth Circuit has reminded us recently that really this is
24   a breach of trust issue and I am not to punish you necessarily
25   on exclusively for the conduct.  So this is a difficult

1    question for me.  The guidelines are 33 to 41 months.  There's

2    a statutory max of 24 months.  The Government's asking for 24

3    months.

4         Where I come out on the violation of supervised release

5    and what I think is sufficient but not greater than necessary

6    and I also think it reflects a breach of the Court's trust, you

7    violated the supervised release conditions within the same

8    month of release with the same crime, 12 months' incarceration

9    to run consecutive to the 72 months for a total sentence of 84

10   months followed by 3 years of supervised release.

11        Let me go over the conditions of supervised release.  Or

12   actually ask you to turn to the presentence report.

13             MR. LAWLOR:  Court's indulgence, please.

14             THE COURT:  It's on Page 26 through 27.

15             MR. LAWLOR:  Your Honor, just for the record, I don't

16   expect the Court not to review these, but we did make sure that

17   we reviewed all these with Mr. Frazer.

18             THE COURT:  Well, that's what I was going to ask.

19             MR. LAWLOR:  We had been put on notice by Mr. Moore's

20   counsel to carefully review those, and therefore we did.

21             THE COURT:  Very good.  So have you reviewed the

22   mandatory conditions with your client and -- so tell me that.

23             MR. LAWLOR:  Yes, Your Honor.

24             THE COURT:  All right.

25             MR. LAWLOR:  As I said, we were at Chesapeake a

1    couple days ago.  We were very careful to review all of those

2    and explain them to Mr. Frazer.

3                THE COURT:  Okay.  So you reviewed the mandatory and

4    standard conditions, correct?

5                MR. LAWLOR:  Correct.

6                THE COURT:  Mr. Frazer, do you understand the

7    mandatory and special conditions of supervised release?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  You went over them with your lawyers and

10   they're on Pages 26 and 27 of the presentence report?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Any questions about them?

13               THE DEFENDANT:  No, ma'am.

14               THE COURT:  All right.  Let me go over the additional

15   recommended conditions of supervised release.  They're on Page

16   28.  You must participate in a mental health treatment program

17   and follow the rules and regulations of that program.  The

18   probation officer in consultation with a treatment provider

19   will supervise your participation in the program.  You must

20   participate in a substance abuse treatment program and follow

21   the rules and regulations of that program.  The provider will

22   supervise -- excuse me, the probation officer will supervise

23   your participation in the program.  You must submit to

24   substance abuse testing to determine if you have used a

25   prohibited substance.  You must not attempt to obstruct or

 1   tamper with the testing methods.  You must not use or possess

 2   any controlled substance without a valid prescription.  If you

 3   do have a valid prescription, you must disclose the

 4   prescription information to the probation officer and follow

 5   the instructions on the prescription.  There's a $300 special

 6   assessment.

 7        Do you understand those additional conditions?  I know you

 8   were just talking to your lawyer.  Do you understand those

 9   additional conditions?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  All right.  I don't think there are any

12   open counts to be dismissed.

13             MR. AKE:  No, Your Honor.  Your Honor, if -- I fully

14   expect an appeal in this case for the reasons we've already

15   talked about.  But it does sound to me like the guidelines did

16   not drive the Court's determination and that you relied

17   primarily on the 3553(a) factors.  Would you be willing to

18   state that on the record to preserve an appellate issue or to

19   preclude an appellate issue for us, that your sentence was

20   driven by the 3553(a) factors in consideration and not by

21   application of the guidelines?

22             MR. LAWLOR:  Your Honor, I second the need to

23   preclude any appellate issues for the Government.

24             THE COURT:  So my sentence was driven by the 3553(a)

25   factors and it was a variant sentence from the guidelines and

1    it was not driven by the guidelines.

2                MR. AKE:  Thank you, Your Honor.  That's all.

3    Appreciate it.

4                THE COURT:  All right.  Is there anything else we

5    should address from the defense's perspective?

6                MR. LAWLOR:  No, Your Honor.  I trust that you'll

7    advise Mr. Frazer of his rights of appeal?

8                THE COURT:  Yes.  Mr. Frazer, you have a right to

9    appeal.  It's 14 days, correct?  Yes.  You must file a notice

10   of appeal within 14 days.

11       Are there any recommendations for the Bureau of Prisons?

12               MR. LAWLOR:  Yes.  I would ask Your Honor that

13   Mr. Frazer be designated at Fort Dix.

14               THE COURT:  I can do that.  You're experienced enough

15   to know that picking a facility doesn't really work with the

16   Bureau of Prisons.  Is there a particular vocational program

17   that --

18               MR. LAWLOR:  That's where the electrician program is.

19               THE COURT:  Okay.  So can I recommend electricianal

20   -- that's more informative to them.

21               MR. LAWLOR:  Yes, please.

22               THE COURT:  Are there any other programs, just in

23   case?

24               MR. LAWLOR:  HVAC.

25               THE COURT:  Electricity and HVAC program, we will

Sentencing 3/9/23

1    recommend that.

2              MR. LAWLOR:  Thank you, Your Honor.

3              THE DEFENDANT:  Thank you, Your Honor.

4              THE COURT:  Hopefully they'll follow that.

5    Mr. Frazer, I really do wish you the best of luck.  I really

6    hope I never see you again, and I mean that in a good way.

7              THE DEFENDANT:  Only time you gonna see me if you

8    letting me off probation, ma'am.

9              THE COURT:  I hope so.

10             PROBATION OFFICER:  Your Honor, I just need

11   clarification on the violation.  Is there any additional

12   supervised release after the 12 months for that or is it three

13   years only for the instant offense?

14             THE COURT:  I think it's three years only for the

15   instant offense.  Mr. Ake?

16             MR. AKE:  Yes, Your Honor.  The Government would

17   recommend termination of the current supervision based on the

18   sentence imposed and then the supervised release would only be

19   on this current offense.

20             THE COURT:  Thank you very much.  That's what we'll

21   do.  All right.  Thank you all.

22             THE CLERK:  All rise.  This Honorable Court stands

23   adjourned.

24        (The proceedings concluded at 5:25 p.m.)

25

Sentencing 3/9/23

1             CERTIFICATE OF OFFICIAL REPORTER

2       I, Amanda L. Longmore, Registered Professional Reporter, in and for the United States District Court for the District of

3  Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the

4  stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in

5  conformance with the regulations of the Judicial Conference of the United States.

6                               Dated this 20th day of June 2023

7                               -S-

8                               AMANDA L. LONGMORE, RPR, FCRR
                             FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$100** [1] - 29:4
**$300** [2] - 29:5;
57:5

**1**

**1** [5] - 2:24;
52:18; 54:9,
13, 20
**100** [3] - 34:2;
35:20, 25
**12** [2] - 55:8;
59:12
**12-047** [2] -
2:8, 10
**12th** [1] - 54:21
**13** [1] - 40:17
**13.24** [1] -
20:18
**14** [4] - 33:2;
45:11; 58:9
**14(B** [1] -
13:12
**140** [4] - 27:14,
22; 32:8;
33:23
**15** [2] - 37:11,
21
**16** [7] - 26:10,
17; 27:8;
32:24; 33:3,
8; 49:11
**160** [1] - 14:7
**163** [1] - 14:7
**17** [5] - 26:10,
19; 27:8;
33:9; 49:12
**170** [1] - 27:22
**174** [1] - 12:3
**175** [3] - 27:15;
32:8; 33:23
**18** [1] - 46:18
**19** [5] - 26:1;
32:9; 33:5;
38:19; 49:12
**19-545** [1] - 2:9
**19-cr-505-
SAG** [1] -
6:16

**2**

**2** [4] - 2:24;
52:18; 54:10,
13
**20** [1] - 33:2
**2002** [1] -
54:21

**2009** [1] - 14:7
**2011** [1] -
49:13
**2019** [4] - 3:18;
8:9; 12:3;
44:3
**2021** [1] - 7:7
**2022** [3] - 2:23;
8:10; 54:20
**2023** [3] - 6:17,
21; 60:6
**20th** [1] - 60:6
**22** [3] - 49:11,
14, 23
**23** [3] - 41:3,
12, 19
**232** [1] - 8:15
**24** [8] - 5:18;
12:24; 28:14;
32:23; 33:2;
54:4; 55:2
**240** [1] - 8:15
**26** [2] - 55:14;
56:10
**27** [2] - 55:14;
56:10
**2702577** [1] -
54:20
**28** [11] - 25:25;
27:21; 32:10,
16, 22;
33:22; 34:6;
38:19; 56:16;
60:3
**29** [1] - 22:20
**2K2.1** [1] - 7:5
**2K2.1(2** [1] -
5:19
**2K2.1(a)(2** [1] -
7:2
**2K2.1(b)(6)(B**
[1] - 13:8
**2K2.1(b)(6)(B
)** [1] - 14:23
**2nd** [1] - 3:18

**3**

**3** [1] - 55:10
**30** [2] - 19:1,
12
**31st** [1] - 6:21
**33** [6] - 7:3;
26:4, 17;
27:8; 28:11;
55:1
**34** [5] - 26:4,
19; 27:8;
49:24; 50:1
**3553** [1] - 5:12

**3553(a** [7] -
23:23; 25:20;
37:23; 46:19;
57:17, 20, 24
**3553(a)** [1] -
27:10
**3E1.1(a)** [1] -
22:12
**3rd** [1] - 2:23

**4**

**4** [9] - 2:24;
3:8; 4:6;
35:15; 36:2;
52:9, 18;
54:12
**4.1** [1] - 19:6
**41** [2] - 28:11;
55:1
**4A1.2(d** [1] -
26:15
**4B1.2** [1] - 7:6
**4th** [1] - 6:17

**5**

**5** [2] - 6:7; 8:7
**50-state** [1] -
9:3
**566** [1] - 14:7
**5:25** [1] - 59:24

**6**

**6** [4] - 5:16;
21:9; 37:10,
20
**6.1** [1] - 21:5
**6.2** [1] - 21:5
**6.7** [1] - 21:9
**681** [1] - 7:16
**694** [1] - 7:16

**7**

**72** [2] - 54:12;
55:9
**753** [1] - 60:3
**79** [1] - 4:21
**7B1.1(a)(1** [1] -
28:2
**7B1.4.a** [1] -
28:11

**8**

**84** [1] - 55:9
**84-month** [1] -
29:15

**9**

**9**

**924(c** [4] -
3:12; 16:2;
22:16; 37:16
**925** [1] - 7:16
**93** [1] - 34:2
**935** [1] - 8:14
**945** [1] - 12:3

**A**

**abandon** [1] -
35:2
**abandoned** [1]
- 34:25
**able** [4] - 16:9,
20; 33:18;
52:2
**ably** [1] - 9:24
**above-
entitled** [1] -
60:4
**absolute** [1] -
43:2
**absolutely** [1]
- 11:18
**abuse** [3] -
49:1; 56:20,
24
**ACCA** [2] -
7:11, 13
**accept** [6] -
24:10, 17,
22; 31:6;
32:17; 40:22
**acceptance**
[10] - 22:8;
23:20, 23;
25:12, 18;
34:9; 36:5;
51:14; 52:2,
14
**accepted** [2] -
23:5; 36:23
**accepting** [3] -
23:14; 24:3
**accident** [7] -
11:5; 14:6,
20, 25; 15:9;
21:24
**accidental** [1]
- 17:7
**accidentally**
[2] - 10:24;
22:2
**according** [1] -
49:6
**accost** [1] -
34:21

**account** [1] -
54:17
**accountabilit
y** [1] - 43:25
**achieve** [1] -
30:9
**acknowledge**
[1] - 29:21
**acknowledgi
ng** [1] - 46:14
**acquittal** [1] -
24:7
**acquitted** [1] -
3:12
**Act** [2] - 12:5,
22
**action** [2] -
11:21; 12:17
**actions** [4] -
43:24; 45:14,
24
**active** [1] -
44:21
**actively** [1] -
42:11
**activity** [2] -
53:15, 17
**Adam** [2] -
2:10, 14
**add** [2] - 4:10;
23:25
**addiction** [2] -
44:16; 49:1
**addition** [2] -
29:11; 43:4
**additional** [4] -
56:14; 57:7,
9; 59:11
**additionally**
[1] - 20:16
**additions** [2] -
4:22; 5:8
**address** [6] -
5:11; 11:22;
23:21; 29:6;
42:13; 58:5
**addressed** [2]
- 6:9; 9:9
**addressing**
[4] - 5:12; 8:6,
11, 19
**adequate** [1] -
37:16
**adjacent** [1] -
16:21
**adjourned** [1] -
59:23
**adjustment** [1]
- 23:21
**admission** [1]

- 4:5
**admit** [3] - 4:3,
15; 36:1
**admitted** [6] -
23:2, 4;
25:24; 35:25;
36:2; 39:16
**admittedly** [1]
- 29:16
**adults** [1] -
26:24
**advantage** [1]
- 45:1
**advise** [1] -
58:7
**advisement**
[1] - 4:15
**advocating** [1]
- 38:17
**affected** [1] -
43:24
**afford** [1] -
28:22
**African** [2] -
20:20
**afternoon** [5] -
2:12, 16;
42:21
**afterwards** [2]
- 11:23; 21:6
**age** [4] - 33:8;
39:10; 40:17;
45:7
**ago** [4] - 38:15;
39:13; 51:7;
56:1
**agree** [8] -
4:23; 25:17;
27:15, 21;
30:12; 35:12;
51:16; 53:25
**agreed** [2] -
35:19; 52:9
**agrees** [1] -
12:1
**AKE** [38] - 2:6;
4:11, 14, 18,
23; 9:20;
11:25; 16:7;
17:15, 21,
24; 18:12,
15, 17, 20;
19:3, 6, 10,
23; 20:4, 16;
21:4, 8, 15;
24:2; 25:5, 8,
10; 27:16;
28:8, 16, 25;
29:8, 11;
30:12; 57:13;

58:2; 59:16
**Ake** [12] - 2:10;
9:14; 15:24;
23:25; 25:1;
27:15; 28:24;
29:7; 32:11;
38:11; 41:24;
59:15
**Ake's** [3] -
32:3, 6;
38:10
**alcohol** [1] -
49:1
**alleged** [1] -
3:18
**allocute** [1] -
4:16
**allocution** [1] -
23:22
**allow** [1] - 18:2
**allowing** [1] -
10:2
**allows** [1] -
36:13
**almost** [4] -
16:16; 41:17;
46:10; 50:17
**Amanda** [1] -
60:2
**AMANDA** [1] -
60:8
**America** [1] -
2:7
**ammunition**
[6] - 13:2, 22;
17:8; 21:18;
28:24
**analysis** [4] -
6:6; 9:17;
12:14
**antisocial** [1] -
30:3
**anxiety** [2] -
44:14; 49:5
**Apartment** [1]
- 19:16
**apartment** [2] -
16:14, 24
**apologize** [4] -
16:7; 18:4;
43:17, 23
**appeal** [14] -
11:12, 14;
12:19; 32:7;
35:4, 13;
36:24; 44:1;
51:25; 52:6;
57:14; 58:7,
9
**appellate** [5] -

9:22; 35:7;
57:18, 23
**application**
[17] - 7:20;
8:1, 22;
13:15,
19-20, 24;
14:3, 13;
15:2, 19;
21:20, 23;
25:15; 52:1;
57:21
**Application** [1]
- 13:11
**applied** [1] -
12:8
**applies** [2] -
17:19; 21:17
**apply** [15] -
7:2; 13:8, 20;
14:1; 15:2,
17-18;
21:24; 22:7,
12; 23:20;
25:21; 27:6;
51:16
**applying** [2] -
7:19; 26:15
**appreciate** [3]
- 32:6;
46:13; 58:3
**appreciated**
[1] - 50:19
**apprehend** [1]
- 9:20
**approach** [5] -
9:17; 19:17;
20:1; 34:21;
38:3
**approached**
[1] - 16:22
**appropriate**
[4] - 42:16;
49:8; 52:16;
54:15
**argue** [1] -
53:16
**argued** [4] -
8:16; 10:9;
32:16; 35:22
**arguing** [1] -
9:16
**argument** [20]
- 5:12; 6:1;
8:12, 16;
9:11, 20;
11:18; 13:6,
9, 18; 14:13;
15:1, 18;
17:6; 23:16;

32:6, 14;
35:21; 38:9
**arguments** [7]
- 6:23; 9:15,
21; 22:14;
32:12; 35:17;
36:22
**arm** [1] - 34:18
**Armed** [2] -
12:5, 22
**arrest** [2] -
20:24
**arrested** [4] -
3:19; 38:23;
40:25; 42:9
**arresting** [1] -
16:10
**article** [2] -
40:20, 22
**articulated** [1]
- 42:17
**aside** [1] - 41:9
**aspects** [1] -
28:20
**aspersion** [1] -
37:18
**assault** [6] -
5:22; 7:24;
12:25; 26:18;
33:17
**assessment**
[2] - 29:5;
57:6
**associated** [1]
- 24:22
**attempt** [1] -
56:25
**attempted** [1] -
16:11
**attempting** [1]
- 29:18
**attention** [1] -
48:13
**attest** [1] -
39:9
**attorney** [1] -
38:15
**Attorney's** [1] -
52:3
**atypical** [1] -
25:23
**audio** [1] -
19:12
**August** [1] -
3:18
**aunt** [1] - 2:19
**authority** [1] -
8:6
**avail** [1] - 44:2
**average** [1] -

32:19
**avoid** [2] -
37:23; 54:1
**awe** [1] - 33:6
**awe-inspiring**
[1] - 33:6

**B**

**background**
[1] - 48:23
**backpack** [1] -
15:9
**bad** [1] - 31:16
**bag** [13] -
14:25; 16:17,
25;
20:10-12,
14, 25; 21:3,
5, 7, 13;
34:23
**baggies** [1] -
17:1
**baked** [1] -
32:15
**ball** [1] - 20:5
**ball** [1] - 40:19
**bandage** [2] -
19:23; 34:18
**base** [9] - 5:16,
18; 12:23;
31:1; 32:9,
22; 34:5;
54:4
**based** [5] - 4:4;
22:1; 31:20;
37:11; 59:17
**basis** [1] - 3:25
**battery** [7] -
7:23, 25; 8:1;
10:14, 18
**bear** [1] -
39:10
**beating** [1] -
44:12
**befuddled** [1] -
37:9
**begging** [1] -
45:3
**beginning** [1] -
41:9
**behalf** [1] -
29:9
**behavior** [2] -
30:3, 5
**belabor** [2] -
6:25; 32:21
**belaboring** [1]
- 7:17
**believes** [1] -

35:8
**belonging** [1] -
10:19
**Beltsville** [1] -
47:16
**bench** [2] -
46:6
**Bennett** [6] -
6:18; 8:21;
9:23; 36:3, 7;
52:11
**best** [3] - 11:1;
44:25; 59:5
**bet** [1] - 31:24
**better** [4] -
11:16; 17:6;
39:9; 43:13
**between** [5] -
16:23; 36:4,
7; 53:12;
54:2
**beyond** [3] -
11:6; 15:25;
35:23
**big** [1] - 16:24
**bind** [4] - 8:12,
18; 18:7
**binding** [3] -
11:18; 14:3;
15:20
**bipolar** [2] -
44:14; 49:5
**birthday** [2] -
45:10
**bit** [1] - 44:7
**body** [2] -
16:10; 20:6
**body-worn** [1]
- 16:10
**bond** [2] - 40:9
**books** [1] -
10:11
**BOP** [2] - 30:3,
17
**Borden** [10] -
6:5; 7:7, 19;
8:4; 9:15, 18;
10:3; 12:12,
15, 20
**born** [1] -
47:21
**bought** [1] -
44:16
**bouncing** [1] -
17:11
**bound** [2] -
8:24; 12:2
**boys** [1] -
39:18
**brain** [1] -

49:17
**Branch** [1] -
47:15
**breach** [1] -
54:17, 24;
55:6
**break** [1] -
41:18
**briefed** [1] -
8:16
**briefly** [4] -
7:1; 8:6; 9:2;
24:2
**briefs** [1] -
9:24
**brings** [1] -
25:25
**broad** [1] -
34:18
**buildings** [2] -
16:24; 19:16
**burden** [10] -
15:15; 16:4;
17:18; 18:11;
22:16; 25:11;
35:23; 36:11,
15
**Bureau** [2] -
58:11, 16
**burgundy** [1] -
20:13
**byproduct** [1]
- 35:2

**C**

**calculation** [2]
- 5:7; 27:14
**calculations**
[3] - 4:24;
5:15
**camera** [2] -
16:10; 20:6
**camp** [1] - 40:9
**candidly** [1] -
39:16
**cannot** [1] -
9:19
**capable** [3] -
48:10
**care** [1] - 9:14
**career** [2] -
7:7; 44:23
**Career** [2] -
12:5, 22
**careful** [1] -
56:1
**carefully** [1] -
55:20
**cares** [1] -

39:23
**carrying** [3] -
16:15, 18;
29:17
**carve** [1] -
11:19
**Case** [2] -
6:15, 19
**case** [58] - 2:4,
9, 22; 3:15,
18, 20; 6:3,
6, 15, 18;
7:7, 18, 21,
24; 8:24;
9:18; 10:4;
11:13; 12:3,
12; 13:12;
14:10, 17,
22; 15:12;
22:13,
22-23, 25;
23:5, 8, 11,
17; 25:22;
26:16; 29:13;
30:6; 31:16;
32:19; 33:21;
34:3, 13;
35:24; 38:1,
25; 39:3;
41:25; 50:11;
52:22; 53:14;
54:4; 57:14;
58:23
**cases** [10] -
8:12, 23;
11:13; 12:10;
13:25; 31:15;
33:20; 34:3;
42:5
**cast** [1] - 37:18
**Category** [5] -
26:2, 8;
27:22; 33:1;
34:4
**category** [4] -
26:5; 28:6;
34:5; 37:12
**caught** [1] -
30:15
**CDF** [2] -
39:14; 51:6
**cell** [2] - 20:17;
41:4
**certain** [3] -
22:16; 24:19;
25:17
**certainly** [28] -
4:5; 6:4, 10,
25; 8:6, 23;
11:11, 22;

12:15, 19;
13:8; 18:3, 9;
21:22; 22:15;
23:19; 24:4,
15; 26:14;
30:14, 19;
31:2, 20;
32:11; 49:21;
53:6
**CERTIFICAT
E** [1] - 60:1
**certified** [1] -
44:22
**certify** [1] -
60:3
**Chaidez** [1] -
36:17
**Chaidez-
Meza** [1] -
36:17
**challenge** [1] -
51:18
**chambered** [1]
- 17:3
**chance** [3] -
6:22; 45:4,
19
**change** [2] -
11:22; 41:1
**changed** [5] -
39:21; 44:5;
50:22; 53:5
**changes** [1] -
12:20
**characteristic
s** [1] - 47:5
**charge** [1] -
27:14
**charged** [7] -
2:25; 3:19;
11:3; 22:20,
24; 29:22
**charges** [1] -
54:11
**Chesapeake**
[1] - 55:25
**chief** [2] - 9:22
**child** [1] - 44:7
**child's** [1] -
41:3
**Circuit** [22] -
5:21; 7:11;
8:8, 13;
11:13, 17;
12:2-4, 6,
16, 18-19;
14:3, 8, 21;
15:20; 27:3;
54:20, 23
**circumstance**

**s** [1] - 11:22
**cite** [5] - 7:15;
8:7; 14:10;
36:18
**cited** [4] - 6:7;
7:21; 23:1
**citing** [1] -
8:14
**clarification**
[1] - 59:11
**Class** [1] -
28:13
**classic** [1] -
49:3
**clause** [3] -
8:5; 9:12;
10:5
**clear** [2] -
30:20; 34:19
**CLERK** [1] -
59:22
**client** [1] -
55:22
**climbing** [1] -
20:9
**close** [4] -
13:13; 21:20;
34:14; 40:5
**closed** [1] -
41:14
**closely** [2] -
35:5; 43:12
**clothed** [1] -
47:15
**clothes** [4] -
19:15, 24;
20:2, 13
**cocaine** [1] -
49:3
**cocking** [1] -
17:3
**Code** [1] -
46:19
**codefendant**
[1] - 16:12
**codefendants**
[1] - 53:13
**coincidence**
[7] - 14:6, 21,
25; 15:7,
9-10; 21:25
**coincidentall
y** [1] - 22:2
**colleague** [1] -
9:22
**colleagues** [1]
- 46:10
**College** [1] -
47:16
**colloquy** [1] -

4:16
**Colton** [1] - 2:8
**comfort** [1] -
53:25
**comforted** [1]
- 53:4
**commit** [1] -
10:14
**committed** [7]
- 5:19; 7:20,
25; 8:2; 9:18;
10:22; 32:24
**committing** [1]
- 46:23
**communicati
ng** [1] - 20:19
**community** [2]
- 31:15;
43:24
**compelled** [1]
- 43:3
**completed** [1]
- 48:8
**completing** [1]
- 48:12
**complicated**
[1] - 22:25
**component** [1]
- 8:3
**compound** [1]
- 7:23
**concern** [1] -
42:5
**concerning** [3]
- 46:7;
49:15; 50:6
**concerningly**
[1] - 29:17
**concluded** [2]
- 20:15;
59:24
**concluding** [1]
- 9:7
**concurrent** [2]
- 54:11, 13
**conditional** [5]
- 23:12;
24:17; 35:10;
44:1; 51:20
**conditions**
[11] - 3:21;
41:8; 51:6;
55:7, 11, 22;
56:4, 7, 15;
57:7, 9
**conduct** [14] -
4:6; 9:10;
23:5, 14;
28:3; 31:11;
33:21-23;

35:2; 37:4,
10; 38:7;
54:25
**Conference**
[2] - 46:6;
60:5
**conference** [1]
- 46:7
**confess** [1] -
37:9
**conformance**
[1] - 60:5
**connection**
[12] - 13:2,
22-23; 14:1,
5, 9, 19;
16:2, 5;
21:18; 22:5
**consecutive**
[1] - 55:9
**consider** [17] -
11:14; 18:3;
23:7, 22;
27:10; 36:10;
38:1; 46:19;
47:3; 48:22;
49:7, 9; 50:1,
8; 51:22;
53:10; 54:22
**consideratio
n** [1] - 57:20
**considered** [1]
- 54:22
**consistent** [3]
- 23:19;
31:3, 10
**consisting** [1]
- 7:23
**conspiracy** [4]
- 2:25;
22:18, 20;
54:10
**constitute** [4] -
7:10, 13-14;
9:1
**constituting**
[1] - 28:3
**constitutiona
l** [2] - 31:4;
51:25
**construction**
[1] - 48:9
**consultation**
[1] - 56:18
**consummate
d** [1] - 10:18
**contacts** [1] -
20:20
**contained** [1] -
16:25

**content** [1] -
4:24
**contest** [1] -
22:15
**contested** [2] -
34:12; 35:5
**continuance**
[2] - 18:8, 10
**continue** [1] -
18:1
**continued** [2] -
30:4; 31:16
**continues** [1] -
11:10
**contractor** [1]
- 48:9
**contrary** [3] -
14:3; 15:2,
19
**contrast** [1] -
15:19
**controlled** [4] -
3:1, 3; 28:4;
57:2
**controlling** [2]
- 11:8; 13:19
**conversation**
[1] - 20:21
**conversation
s** [1] - 40:14
**convicted** [2] -
3:7; 26:24
**conviction** [16]
- 3:16; 4:7;
5:23; 6:2;
7:3; 12:4, 24;
26:16; 28:7;
29:5, 24;
33:7, 17;
49:23
**convictions**
[8] - 3:20;
4:5; 5:20;
26:21; 27:7,
12; 30:24;
49:11
**convince** [1] -
17:19
**cooperate** [1] -
36:5
**cooperating**
[2] - 36:8;
46:7
**core** [2] - 23:5,
16
**corner** [1] -
20:7
**correct** [16] -
3:3, 9-10;
5:24; 22:9,

17-18; 28:7,
24-25; 56:4;
58:9; 60:3
**corrections**
[1] - 4:22; 5:8
**counsel** [4] -
23:4; 24:15;
29:22; 55:20
**counsel's** [1] -
2:14
**count** [13] -
3:4, 12; 7:4;
10:9; 22:17;
23:18; 26:18,
21; 27:13;
29:5; 37:16;
54:3
**Count** [8] - 3:8;
4:6; 35:15;
36:2; 52:9,
18; 54:12
**counterfactu
al** [1] - 10:23
**counting** [1] -
32:25
**country** [2] -
34:3; 36:13
**counts** [7] -
10:5; 24:19;
27:11; 52:8;
57:12
**Counts** [4] -
2:24; 52:18;
54:9, 13
**County** [3] -
3:19; 5:21;
34:16
**couple** [2] -
30:13; 56:1
**course** [8] -
5:4; 11:21;
12:17; 23:10;
48:4; 50:1,
13; 52:21
**Court** [54] -
2:3; 5:10, 21;
6:3, 11, 22;
7:5, 8, 19;
8:13, 23, 25;
9:25; 10:7;
11:8, 12, 16,
19; 13:19;
14:1; 15:15,
18; 18:7, 9;
21:1; 22:25;
23:7, 20, 22;
24:13; 26:21;
27:1; 29:6;
30:18; 31:20;
32:12; 36:19;

37:8, 19, 23;
39:20; 40:22;
42:6, 13, 15;
46:9, 14;
54:16; 55:16;
59:22; 60:2
**court** [13] -
3:17; 7:8;
8:18; 12:11;
14:15; 22:25;
30:25; 35:7;
42:10; 43:18;
46:6; 47:5
**COURT** [97] -
2:4, 12, 16,
20; 3:6, 11;
4:4, 13, 17,
19; 5:1, 13;
6:1; 9:5, 13;
11:24; 12:1;
14:10, 14,
24; 15:4, 7,
13, 22;
17:12, 16,
22; 18:10,
13, 16, 19,
23, 25; 19:2,
7, 21; 20:3;
21:2, 7, 14,
16; 23:24;
25:3, 6, 9,
14; 26:9;
27:5, 18, 25;
28:10, 17,
19; 29:1, 4,
9; 30:8;
31:23; 32:1,
4; 33:11;
36:25; 38:6;
42:20, 23;
43:1, 8, 11,
14, 18, 21;
45:25; 46:4,
9; 50:1;
55:14, 18,
21, 24; 56:3,
6, 9, 12, 14;
57:11, 24;
58:4, 8, 14,
19, 22, 25;
59:4, 9, 14,
20; 60:8
**Court's** [4] -
6:5; 18:7;
55:6; 57:16
**court's** [1] -
55:13
**courtroom** [1]
- 19:8
**courts** [3] -

41:13; 43:23;
45:2
**courtyard** [2] -
16:23; 20:11;
29:20
**cousin** [1] -
46:3
**cover** [1] -
43:8
**COVID** [3] -
39:1
**credit** [6] -
25:13, 20;
36:5; 51:4;
52:7, 10
**creep** [1] -
33:20
**crime** [24] -
3:7, 14; 5:23;
7:4, 6, 23;
8:5; 9:1,
18-19; 10:6,
10; 11:10;
12:7, 21;
28:12; 30:25;
34:22; 35:18;
46:23; 49:21;
55:8
**crimes** [2] -
3:19; 37:17
**Criminal** [7] -
2:8; 12:5, 22;
26:2, 7; 33:1;
34:4
**criminal** [22] -
4:25; 9:22;
26:1, 5-6,
23; 27:7;
28:6; 30:14;
32:9; 33:5;
34:5; 37:12;
47:17; 49:9,
15; 53:15,
18-19; 54:3,
18
**criminality** [2]
- 39:11;
40:16
**criminalizing**
[2] - 7:9
**crossroads** [1]
- 41:17
**crying** [1] -
44:12
**crystal** [1] -
40:19
**current** [4] -
11:17, 21;
59:17, 19
**custody** [1] -

29:16

**D**

**dangerous** [1] - 28:5
**Darryl** [2] - 2:7, 15
**Dated** [1] - 60:6
**daughter** [4] - 40:11; 44:21; 45:4; 51:3
**daughter's** [1] - 44:17; 50:23
**daylight** [1] - 34:18
**days** [7] - 20:24; 23:10; 39:13; 51:7; 56:1; 58:9
**DC** [4] - 6:3; 12:13; 41:6; 51:7
**dealing** [1] - 29:16
**dealt** [1] - 30:15
**death** [2] - 41:3, 10
**debatable** [1] - 35:6
**decide** [2] - 8:24; 35:8
**decided** [1] - 9:16
**decides** [1] - 40:17
**decision** [6] - 6:5; 8:8, 10; 11:12; 37:5; 42:19
**decisionmaking** [1] - 31:16
**decrease** [1] - 22:11
**decreases** [2] - 39:11; 49:22
**defendant** [10] - 10:20; 12:11; 13:21; 20:4, 17; 25:23; 31:14; 36:9, 11; 46:7
**DEFENDANT** [15] - 42:22, 25; 43:6, 10,

16, 20, 22; 46:3; 49:25; 56:8, 11, 13; 57:10; 59:3, 7
**defendant's** [1] - 54:16
**defendants** [2] - 38:7; 53:13
**Defender** [1] - 6:24
**defense** [4] - 17:6; 24:15; 35:22; 38:15
**defense's** [1] - 58:5
**defer** [1] - 31:20
**deferring** [1] - 10:7
**define** [1] - 39:13
**defined** [1] - 21:19
**defining** [1] - 10:10
**definition** [3] - 7:6; 8:5; 9:8
**degree** [7] - 5:22; 12:24; 26:18; 33:17; 40:19; 54:17
**deliberate** [1] - 10:11
**DEMETRIOU** [18] - 5:25; 6:4; 9:6; 13:5; 14:11, 17; 15:1, 6, 11, 14; 19:5; 22:10; 26:3, 12; 27:23; 28:9, 18; 29:3
**Demetriou** [5] - 2:14; 5:10, 24; 27:20; 28:17
**Demetriou's** [1] - 21:21
**denied** [2] - 24:5, 8
**deprived** [1] - 36:21
**describe** [1] - 44:7
**description** [1] - 19:21
**deserves** [1] - 50:13

**designated** [1] - 58:13
**detail** [1] - 25:1
**details** [1] - 8:20
**detention** [1] - 51:6
**deter** [2] - 30:2; 31:13
**determination** [1] - 57:16
**determine** [2] - 46:20; 56:24
**deterrence** [5] - 30:6, 9-10, 24; 46:22
**deterring** [1] - 46:22
**develop** [1] - 11:5
**diagnosed** [1] - 49:5
**Dickson** [7] - 8:9; 10:2, 16; 11:9; 12:6
**difference** [3] - 27:1; 36:4; 38:5
**differences** [3] - 37:24; 53:16
**different** [11] - 15:25; 16:1; 26:25; 34:3, 6; 38:22; 40:18; 41:21; 44:13
**differentiate** [1] - 30:13
**difficult** [4] - 31:7; 46:12, 14; 54:25
**digital** [1] - 17:1
**dim** [3] - 40:13; 41:23
**diminution** [1] - 51:5
**dip** [1] - 50:9
**directs** [1] - 14:1
**disappointing** [1] - 48:6
**disclose** [1] - 57:3
**discount** [1] - 49:18
**discretion** [1] - 11:20
**discuss** [3] -

47:7; 52:18
**discussed** [2] - 32:21; 48:23
**discussions** [2] - 23:11; 24:17
**dismissed** [1] - 57:12
**disorder** [2] - 44:14; 49:4
**disparate** [1] - 37:23
**disparities** [2] - 53:12; 54:2
**disparity** [3] - 32:15; 37:8; 42:2
**dispose** [1] - 29:18
**dispute** [1] - 5:22
**disputed** [1] - 23:3
**disqualifies** [1] - 25:12
**disregard** [1] - 13:25
**distanced** [1] - 49:19
**distinctions** [1] - 50:11
**distribute** [13] - 3:1; 13:4; 16:6; 22:6; 24:6, 8, 10; 35:20, 25; 50:14; 54:11
**District** [6] - 6:3; 11:16; 12:13; 46:9; 60:2
**district** [1] - 6:9
**disturbed** [1] - 17:4
**Dix** [1] - 58:13
**DLB-19-545** [1] - 2:8
**DMV** [1] - 41:5
**done** [6] - 45:14-16; 50:21
**double** [2] - 32:25; 54:3
**doubt** [2] - 15:25; 35:24
**down** [6] - 6:10; 34:17; 38:2; 43:6,

14, 19
**downward** [1] - 23:21
**drive** [2] - 40:6; 57:16
**driven** [3] - 57:20, 24; 58:1
**driving** [5] - 29:25; 33:9, 11, 13
**drop** [2] - 34:24
**drug** [13] - 3:13; 13:12, 14, 25; 14:21; 22:23; 23:17; 24:6; 27:12; 34:2; 35:18; 49:1
**drugs** [10] - 13:14; 14:24; 15:8; 20:14; 22:19; 24:8; 29:17; 34:1
**Drummond** [1] - 7:16
**Duckworth** [2] - 7:21, 24
**due** [3] - 14:6, 20; 44:14
**during** [8] - 19:8; 39:1; 41:4, 11, 14; 46:1; 50:18; 51:6

**E**

**early** [1] - 47:19
**earth** [1] - 39:15
**easy** [1] - 46:13
**ECF** [2] - 4:21; 36:18
**effect** [1] - 36:21
**either** [4] - 4:17; 10:17; 33:2; 46:13
**electing** [1] - 36:20
**electrician** [6] - 40:7; 44:22; 48:3; 58:18
**electricianal** [1] - 58:19

**electricity** [1] - 58:25
**element** [3] - 25:17; 35:24; 36:2
**elements** [1] - 8:5
**emerged** [1] - 29:15
**employment** [2] - 47:25; 48:1
**encourage** [1] - 40:22
**end** [1] - 42:4
**endeavor** [1] - 47:9
**ended** [1] - 32:10
**endured** [1] - 44:8
**engage** [1] - 39:11
**engaged** [3] - 31:17; 40:16; 48:2
**enhancement** [7] - 7:2; 13:7, 15, 21; 14:1; 15:16
**enter** [3] - 23:12; 29:1; 35:10
**entire** [1] - 40:17
**entirely** [1] - 9:17
**entitled** [1] - 60:4
**enumerated** [2] - 9:2, 11
**especially** [1] - 44:25
**essentially** [4] - 13:11; 25:10; 31:14; 53:21
**Evans** [1] - 6:15
**eventually** [1] - 16:13
**evidence** [8] - 15:15; 16:3, 9; 17:14, 20; 18:5, 18; 20:17
**exact** [1] - 30:25
**exactly** [5] - 29:25; 47:18,

24; 51:25
**example** [1] - 14:8
**exceeding** [2] - 3:8; 28:4
**exception** [2] - 42:1
**exclusively** [1] - 54:25
**excuse** [5] - 21:23; 26:1; 38:11; 39:25; 56:22
**exercise** [1] - 31:4
**exhibit** [4] - 19:5, 10; 21:4; 23:1
**Exhibit** [3] - 19:6; 20:18; 21:5
**expect** [2] - 30:23; 55:16; 57:14
**experienced** [1] - 58:14
**explain** [2] - 47:23; 56:2
**extensive** [1] - 53:18
**extensively** [1] - 8:20
**external** [1] - 41:20
**extraordinary** [2] - 48:20; 52:8

**F**

**F.3d** [4] - 7:16; 8:14; 12:3; 14:7
**facilitating** [1] - 13:16
**facility** [1] - 58:15
**fact** [14] - 15:8; 17:13; 36:10, 14, 20, 23; 37:11; 39:21; 41:11; 48:21; 50:5; 52:7; 53:4
**factor** [3] - 16:24; 33:20; 36:15
**factors** [12] - 5:12; 23:19, 23; 27:9;

31:8; 46:16, 20; 47:3; 54:22; 57:17, 20, 25
**facts** [3] - 24:18; 33:17
**factual** [1] - 50:11
**failed** [1] - 30:1
**fair** [1] - 52:3
**faith** [2] - 40:21
**family** [12] - 2:17; 5:4; 43:23; 44:24; 46:12, 17; 47:12; 51:2; 52:25; 53:7, 22
**far** [6] - 17:9; 25:20; 32:18; 37:13; 54:6
**fashion** [1] - 49:8
**fashioning** [1] - 54:15
**father** [3] - 39:24; 44:17, 20
**FCRR** [1] - 60:8
**fear** [1] - 41:9
**fed** [1] - 47:14
**Federal** [1] - 6:24
**federal** [11] - 3:16, 22-23; 28:3; 30:16; 31:12; 36:13; 47:5; 50:4, 14
**FEDERAL** [1] - 60:8
**felon** [2] - 33:25; 54:12
**felonies** [3] - 7:10, 13
**felony** [9] - 5:20; 12:5; 13:3, 17, 22, 24; 14:19; 21:18; 28:14
**felt** [2] - 39:5; 41:17
**figures** [1] - 20:8
**file** [1] - 58:9
**filed** [1] - 3:17
**filings** [1] - 37:19

**final** [1] - 27:11
**finally** [4] - 38:8; 40:15, 17; 51:13
**financial** [1] - 28:20
**fine** [5] - 28:21; 36:7; 43:15
**fire** [1] - 17:10
**firearm** [27] - 3:6, 13, 16; 13:2, 13, 16, 22; 14:2, 5, 18, 20; 15:8; 16:4; 17:2; 21:18; 22:5; 24:5; 25:24; 27:12; 28:6, 23; 29:18; 49:13; 50:4, 8; 54:12
**first** [13] - 3:4; 5:2, 7, 22-23; 12:24; 19:23; 33:17; 43:16, 22; 46:3; 47:10; 52:18
**first-degree** [3] - 5:23; 12:24; 33:17
**fit** [1] - 35:12
**five** [2] - 53:20
**flight** [1] - 34:23
**floor** [1] - 16:22
**focus** [3] - 32:2; 50:16; 51:2
**follow** [10] - 11:8, 16; 12:18, 22; 46:18; 48:6; 56:17, 20; 57:4; 59:4
**followed** [1] - 55:10
**following** [1] - 19:9
**followthrough** [1] - 48:13
**footage** [1] - 16:10
**force** [9] - 7:10, 20; 8:1, 22; 9:10; 10:5, 17; 11:10
**foregoing** [1] -

60:3
**foremost** [2] - 43:16, 22
**forfeiture** [1] - 28:23
**forgive** [1] - 45:23
**form** [1] - 44:11
**formally** [1] - 4:15
**format** [1] - 60:4
**former** [1] - 9:22
**Fort** [1] - 58:13
**forward** [4] - 7:18; 15:15, 17; 20:5
**four** [9] - 13:1, 6; 21:17; 22:7; 42:10; 44:5; 50:17, 21
**four-level** [4] - 13:1, 6; 21:17; 22:7
**Fourth** [20] - 7:11; 8:8, 13; 11:12; 12:2-4, 6, 16, 18-19; 14:3, 8, 21; 15:20; 27:3; 54:20, 23
**frankly** [1] - 53:24
**Fraser** [1] - 2:15
**fraud** [1] - 33:20
**Frazer** [58] - 2:8, 23; 3:14; 5:19; 16:11, 19, 21; 19:15; 20:9, 18, 22; 21:17; 22:13; 23:2, 5, 11; 24:14; 25:17, 23; 26:1, 17, 19; 27:8; 28:6, 21; 29:14, 24; 30:13; 33:16; 34:17, 21-23; 35:7; 36:20; 38:4, 11, 21; 39:4, 13, 25;

40:11, 14, 23; 41:3, 15; 42:18, 21; 46:17; 55:17; 56:2, 6; 58:7, 13; 59:5
**Frazer's** [9] - 2:17; 5:14; 23:2, 22; 30:4; 31:17; 32:17; 37:5; 38:13
**free** [1] - 31:4
**friend** [1] - 5:4
**friends** [4] - 2:17; 6:24; 45:16
**front** [1] - 36:22
**frustrated** [1] - 24:16
**frustrating** [1] - 29:13
**fulfilling** [1] - 40:6
**full** [3] - 18:2; 43:25; 45:23
**fully** [3] - 4:23; 9:20; 57:13
**functioning** [1] - 49:17
**fundamental** [1] - 27:1
**furtherance** [4] - 3:13; 16:2; 24:6; 35:18

## G

**gaining** [1] - 25:12
**Gallagher** [2] - 6:14; 9:23
**gambling** [1] - 49:1
**garners** [1] - 30:25
**general** [1] - 30:24
**generally** [3] - 24:13; 30:18; 52:11
**generic** [1] - 9:7
**generous** [1] - 31:5
**gentleman** [2] - 45:25; 46:1
**given** [8] - 8:1;

10:2; 31:2; 46:15; 47:14; 53:20
**gleaned** [2] - 33:18; 47:10
**global** [1] - 41:4
**goals** [2] - 46:21
**God's** [1] - 39:14
**gonna** [1] - 59:7
**Government** [32] - 2:4; 4:21; 6:7, 13; 8:7; 13:11; 22:15, 23; 23:11, 13; 25:10, 15; 29:10, 14, 22; 31:10; 34:11; 35:13, 23; 36:10, 14; 37:3, 13, 19; 46:14; 50:2; 53:16, 24; 57:23; 59:16
**Government's** [10] - 4:10; 5:3; 13:9; 14:12; 15:15; 22:21; 24:20; 37:10; 51:21; 55:2
**Grade** [1] - 28:1
**graduated** [1] - 47:15
**Graham** [1] - 26:22
**grams** [3] - 34:2; 35:20, 25
**granted** [1] - 10:4
**great** [2] - 14:16; 44:24
**greater** [4] - 40:10; 46:20; 54:9; 55:5
**green** [1] - 39:14
**Grimm** [5] - 2:22; 22:19; 34:25; 35:6, 8
**Grimm's** [3] - 23:9; 34:14;

35:4
**ground** [1] - 17:11
**guard** [1] - 17:5
**guess** [2] - 32:10; 40:6
**Guideline** [4] - 5:19; 13:7; 14:22; 22:12
**guideline** [14] - 4:24; 5:11, 15; 13:20; 15:3, 20; 21:23; 26:15, 20; 27:3; 28:2; 31:2, 19; 32:7
**guidelines** [43] - 4:12; 5:6, 9, 14; 7:4, 7, 15; 9:1; 12:8, 21; 21:20; 25:13, 21; 26:25; 27:6, 11, 13, 22, 24-25; 28:20; 29:22; 30:1; 32:15, 20; 34:7; 37:3; 42:3; 46:15; 47:7; 51:15; 52:20, 22; 54:3; 55:1; 57:15, 21, 25; 58:1
**guilty** [12] - 2:23, 25; 10:20; 35:10, 15; 36:24; 46:6; 51:24; 52:5, 7, 9
**gun** [24] - 14:24; 17:7; 20:14, 21-22, 25; 21:6, 11-12; 22:23; 23:3, 17; 27:14; 32:23; 33:24; 35:15, 18; 36:2; 38:2; 39:16

## H

**half** [1] - 44:5
**hammer** [1] - 17:3
**hand** [2] - 50:8

**hang** [2] - 39:18
**happy** [2] - 43:5; 45:9
**hard** [3] - 39:12; 51:8, 11
**hardest** [1] - 46:11
**harm** [1] - 53:3
**harsh** [1] - 51:5
**head** [1] - 48:17
**health** [2] - 49:4; 56:16
**hear** [6] - 5:11; 25:3; 33:14; 34:23; 42:18; 43:5
**heard** [3] - 3:24; 9:14; 42:23
**hearing** [8] - 2:10; 6:20; 9:15; 18:11; 34:13; 39:1, 14; 46:1
**hearings** [1] - 23:10
**heart** [2] - 22:22; 47:9
**heartfelt** [1] - 53:8
**held** [5] - 7:8; 10:5; 12:6; 14:4; 60:4
**help** [5] - 21:1; 44:17, 25; 45:2, 5
**helpful** [1] - 18:8
**hereby** [1] - 60:3
**high** [3] - 29:23; 30:7; 52:22
**higher** [3] - 8:17; 27:13
**hips** [1] - 16:18
**history** [26] - 4:25; 23:7; 24:12; 26:1, 5, 7; 27:7; 28:6; 30:14; 32:9; 33:5; 34:5; 37:12; 47:4, 17, 25; 48:1, 25; 49:9, 15;

53:18; 54:4, 19
**History** [4] - 26:2, 8; 33:1; 34:4
**hits** [1] - 10:24
**holding** [2] - 9:8; 21:23
**hollow** [2] - 40:24; 41:25
**home** [2] - 40:3; 45:17
**honestly** [2] - 41:16; 42:6
**Honor** [106] - 2:6, 13, 15, 19; 3:5; 4:2, 11, 14, 18, 23; 5:10, 25; 6:4; 7:17; 9:21; 11:7, 25; 13:5, 18; 15:1; 16:7; 17:15, 21, 24; 18:1, 12, 15, 20-21; 19:10; 20:16; 21:4, 11, 15; 22:10, 13; 24:2, 25; 25:5; 26:3, 12, 16; 27:17, 23; 28:8, 16, 25; 29:3, 8, 11, 13, 21; 30:7, 12; 31:18, 22, 24; 32:5, 20, 25; 33:5, 20; 34:7, 9; 36:3, 18; 37:1, 3, 7, 22; 38:8, 14, 21; 39:7, 10; 40:1, 4, 12; 41:6, 21; 42:2, 11, 17, 22; 44:4; 45:3, 6; 55:15, 23; 56:8, 11; 57:13, 22; 58:2, 6, 12; 59:2, 10, 16
**Honor's** [1] - 42:4
**Honorable** [1] - 59:22
**hope** [4] - 6:11; 40:21;

59:6, 9
**hopefully** [3] - 49:21; 50:25; 59:4
**horrific** [1] - 41:14
**horrifically** [1] - 41:20
**host** [1] - 42:1
**hours** [2] - 41:4, 12
**human** [1] - 40:16
**hurts** [1] - 45:12; 47:22
**hustling** [1] - 29:17
**HVAC** [1] - 58:24

## I

**idea** [1] - 17:17
**identical** [3] - 37:10; 53:15
**identified** [1] - 19:19
**illegal** [1] - 34:1
**illness** [1] - 41:10
**immediate** [1] - 29:24
**immediately** [4] - 16:12, 21; 17:10; 24:24
**impact** [3] - 17:5; 26:5; 50:25
**impaired** [1] - 49:17
**important** [8] - 32:2, 4; 42:3; 44:22; 47:1; 51:1; 53:1
**importantly** [1] - 37:22
**impose** [3] - 27:7; 35:12; 52:17
**imposed** [3] - 27:9; 36:16; 59:18
**imprisonment** [3] - 3:7; 28:4, 10
**improper** [1] - 25:2
**improved** [1] -

41:8
**improving** [1] - 30:5
**impulsive** [1] - 49:18
**incarcerated** [11] - 39:22; 41:12; 44:9, 15; 48:2, 9, 16; 50:17, 24
**incarceration** [3] - 44:6; 50:22; 55:8
**incident** [1] - 33:3
**include** [2] - 46:6, 22
**including** [4] - 5:3; 20:18; 40:9; 47:14
**inconsistent** [2] - 37:4
**incorporate** [5] - 6:12, 21, 23; 9:3; 42:18
**incorporated** [1] - 6:6
**incorporates** [1] - 7:5
**increase** [3] - 13:1; 21:17; 22:7
**incredible** [2] - 52:25; 53:7
**incredibly** [1] - 48:5
**incurred** [1] - 33:8
**Indictment** [1] - 2:24
**individual** [1] - 20:19
**individuals** [1] - 53:13
**indulgence** [1] - 55:13
**information** [2] - 34:22; 57:4
**informative** [1] - 58:20
**insanity** [1] - 44:11
**inside** [16] - 20:14, 25; 21:2, 6-7, 11
**insisted** [1] - 24:20
**inspiring** [1] -

33:6
**instant** [5] - 2:9; 5:20; 27:16; 59:13, 15
**instantaneously** [2] - 10:25; 11:6
**instead** [1] - 33:2
**instincts** [1] - 49:18
**instructed** [1] - 37:23
**instructions** [2] - 10:13; 57:5
**intent** [17] - 3:1; 10:14, 16, 25; 11:5; 13:3; 16:5; 22:6; 24:5, 8, 10; 35:20, 25; 50:13; 54:10
**intentions** [1] - 37:5
**interest** [1] - 19:18
**interesting** [1] - 12:14
**interpret** [1] - 11:19
**interpretations** [1] - 7:12
**interpreting** [1] - 14:22
**interrupt** [2] - 17:12; 26:3
**interrupted** [1] - 26:6
**introduced** [3] - 17:24; 18:5
**Investigation** [1] - 4:20
**involved** [7] - 19:19, 22; 24:13; 28:3; 34:20; 37:14; 41:7
**involvement** [1] - 37:17
**involves** [1] - 28:5
**issue** [16] - 6:9; 8:11, 19, 21; 9:9; 11:15; 12:12, 18; 13:1; 22:8; 35:6;

36:24; 51:25; 54:24; 57:18
**issues** [3] - 5:9, 11; 57:23
**itself** [3] - 13:20; 21:5; 25:16

## J

**Jacobs** [1] - 20:6
**jail** [5] - 32:8; 39:16; 41:6, 19; 51:7
**January** [2] - 6:16, 21
**Jason** [2] - 9:23; 10:8
**Jenkins** [5] - 14:7, 18; 15:5; 16:3; 21:21
**job** [3] - 40:5, 8; 48:4
**Johnson** [6] - 8:8; 9:16; 10:2; 11:9; 12:3
**Judge** [23] - 2:22; 6:5, 14, 18; 7:18, 21; 8:21; 12:14; 22:19; 23:8; 30:22; 34:14, 25; 35:6, 8; 36:3, 6; 38:11, 24; 41:7; 46:10; 49:13, 23
**judge** [6] - 9:3; 17:16; 30:19; 35:12; 47:1; 53:1
**Judges** [1] - 9:23
**judges** [4] - 6:9; 12:11; 30:20; 36:13
**judgment** [2] - 48:13; 49:17
**Judicial** [1] - 60:5
**July** [1] - 54:20
**June** [1] - 60:6
**juries** [1] - 10:16
**jurisprudence** [1] - 36:12

**jury** [8] - 2:23; 10:13; 22:20; 25:24; 35:19, 22; 36:22
**justice** [1] - 26:23
**juveniles** [1] - 26:24

## K

**key** [1] - 13:23
**Kibbe** [1] - 2:11
**kids** [1] - 45:16
**kind** [2] - 16:16; 18:4
**knowing** [2] - 41:12; 53:25
**knowledge** [1] - 36:13
**knows** [5] - 7:5; 26:21; 38:14; 39:10; 41:6
**Kollar** [1] - 41:7
**Kollar-Kotelly** [1] - 41:7
**Kotelly** [1] - 41:7

## L

**lacking** [1] - 41:8
**landing** [1] - 16:23
**landscape** [1] - 12:20
**language** [2] - 13:23; 16:1
**larceny** [1] - 7:23
**large** [1] - 10:6
**larger** [1] - 31:15
**last** [5] - 6:3; 12:6; 40:5; 42:17; 44:5
**law** [5] - 3:22; 10:8; 46:24; 50:14
**LAWLOR** [31] - 2:13, 18; 3:5, 10; 4:2; 5:9; 18:21, 24; 19:1, 4; 24:25; 31:24; 32:3, 5;

33:13; 37:1; 38:8; 43:13; 55:13, 15, 19, 23, 25; 56:5; 57:22; 58:6, 12, 18, 21, 24; 59:2
**Lawlor** [5] - 2:14; 3:24; 5:1, 6; 23:21; 42:20
**lawyer** [1] - 57:8
**lawyers** [3] - 43:2; 48:23; 56:9
**lawyers'** [1] - 47:11
**lay** [1] - 16:8
**laying** [1] - 7:22
**lead** [1] - 26:18
**learned** [1] - 40:7
**learning** [1] - 48:11
**least** [4] - 4:6; 9:24; 11:8; 41:5
**left** [1] - 41:18
**legal** [8] - 15:18; 22:14, 16; 34:2; 35:17, 21; 36:22; 37:19
**legality** [1] - 51:18
**lengthier** [1] - 30:13
**lengthy** [2] - 29:15; 30:17
**lenient** [2] - 45:20, 23
**less** [5] - 11:4; 24:23; 30:21; 31:5; 38:10
**lesser** [1] - 30:25
**letter** [6] - 5:5; 39:8; 40:23; 43:5; 50:19
**letters** [2] - 5:4; 53:8
**letting** [1] - 59:8
**level** [19] - 5:16, 18; 12:24; 13:1, 6; 21:17; 22:7, 11;

23:21; 25:1,
18, 25;
29:17; 32:10,
16, 22-23;
34:5; 54:4
**levels** [1] -
34:6
**life** [11] -
38:13; 39:21;
40:17; 42:12,
14; 44:9, 21;
45:15; 49:16;
50:17; 53:2
**light** [4] - 9:15,
18; 12:12, 15
**likelihood** [1] -
39:11
**limited** [2] -
48:1; 54:17
**line** [2] - 26:22;
36:7
**lined** [2] - 40:8;
48:4
**liquor** [1] -
49:3
**listening** [1] -
15:4
**live** [2] - 44:4;
45:15
**living** [1] -
45:15
**loaded** [4] -
17:2; 29:18;
50:6
**loads** [1] -
18:22
**local** [1] - 3:22
**located** [2] -
16:13; 21:12
**Lockwood** [1]
- 19:16
**Longmore** [1]
- 60:2
**LONGMORE**
[1] - 60:8
**look** [13] -
6:22; 7:12;
22:22; 23:1,
16; 32:7;
33:15, 21;
38:20; 47:6,
25; 53:1
**looked** [2] -
13:8; 38:19
**looking** [2] -
9:6; 40:12
**lost** [1] - 51:19
**love** [2] -
44:24; 47:14
**loving** [1] -

47:13
**low** [1] - 29:17
**low-level** [1] -
29:17
**luck** [1] - 59:5

# M

**ma'am** [5] -
42:25; 49:25;
56:13; 57:10;
59:8
**main** [2] - 38:8
**majority** [2] -
9:8; 44:9
**management**
[1] - 48:9
**mandatory** [3]
- 55:22;
56:3, 7
**manufacturin
g** [1] - 13:14
**marijuana** [15]
- 3:2; 13:4;
16:5; 17:1;
22:6; 23:4,
18; 35:16,
20, 25; 49:2;
50:14; 54:10
**marry** [2] -
33:22
**Maryland** [23] -
5:21; 6:2;
7:19, 22, 25;
8:3, 22, 25;
9:7, 17; 10:5,
7, 10, 16, 22;
11:9; 12:4, 7,
20, 25; 60:3
**Maryland's** [1]
- 10:13
**massive** [1] -
22:18
**material** [1] -
13:14
**matter** [5] -
2:7; 18:8;
44:20; 51:17;
60:4
**matters** [1] -
17:18
**max** [1] - 55:2
**maximum** [2] -
28:12, 14
**mean** [5] -
33:13; 38:18;
49:2; 59:6
**meaning** [2] -
13:25; 46:22
**meaningful** [1]

- 41:1
**means** [1] -
25:19
**medication** [1]
- 49:6
**medications**
[1] - 44:14
**Medinger** [2] -
9:23; 10:8
**meet** [4] - 9:7;
16:4; 22:16;
46:21
**members** [1] -
44:24
**memo** [6] -
6:8, 13;
14:10; 22:24;
23:8
**memorandu
m** [2] - 8:8;
13:9
**men** [1] - 38:1
**mens** [1] - 8:21
**mental** [1] -
49:4; 56:16
**mercy** [2] -
45:19, 22
**mere** [4] -
14:6, 20;
32:23; 34:10
**merge** [1] -
27:12
**message** [1] -
31:11
**messages** [1] -
20:17
**messed** [1] -
45:21
**methods** [1] -
57:1
**Meza** [1] -
36:17
**Michael** [1] -
2:13
**microphone**
[1] - 43:12
**middle** [1] -
31:19
**might** [1] -
53:15
**Mike** [2] -
20:20
**Miller** [1] -
26:23
**mind** [2] -
19:3; 48:12
**mindset** [2] -
50:22; 53:4
**minimizing** [1]
- 33:24;

49:19
**minute** [2] -
17:12; 18:13
**missing** [1] -
48:14
**mistake** [1] -
45:22
**mistakes** [1] -
44:19
**modest** [1] -
30:2
**moment** [2] -
18:21; 46:5
**Montgomery**
[3] - 3:19;
5:20; 34:16
**month** [3] -
19:20; 50:3;
55:8
**months** [16] -
27:14, 22;
28:11, 14;
38:23; 39:15;
42:9; 54:11,
13; 55:1-3,
9-10; 59:12
**months'** [1] -
55:8
**Moore** [17] -
16:12, 18,
20; 19:16,
18; 20:5;
34:17-19,
21, 23;
37:12; 38:4;
39:25; 42:16;
51:7; 53:22
**Moore's** [6] -
30:11; 37:15;
39:20; 47:8;
53:17; 55:19
**moral** [1] -
44:20
**most** [8] -
29:13; 39:23;
42:5; 46:12;
47:1; 49:10;
50:16; 53:1
**mostly** [2] -
38:25; 46:17
**mother** [9] -
2:18; 39:24;
41:3; 44:6,
17; 48:17;
50:23; 51:3
**motion** [2] -
44:2; 51:19
**motions** [5] -
17:25; 22:14;
23:9; 34:12;

39:1
**motivated** [1] -
48:19
**Motz** [5] -
30:22; 38:12,
24; 49:13, 24
**MR** [87] - 2:6,
13, 18; 3:5,
10; 4:2, 11,
14, 18, 23;
5:9, 25; 6:4;
9:6, 20;
11:25; 13:5;
14:11, 17;
15:1, 6, 11,
14; 16:7;
17:15, 21,
24; 18:12,
15, 17,
20-21, 24;
19:1, 3-6,
10, 23; 20:4,
16; 21:4, 8,
15; 22:10;
24:2, 25;
25:5, 8, 10;
26:3, 12;
27:16, 23;
28:8, 16, 18,
25; 29:3, 8,
11; 30:12;
31:24; 32:3,
5; 33:13;
37:1; 38:8;
43:13; 55:13,
15, 19, 23,
25; 56:5;
57:13, 22;
58:2, 6, 12,
18, 21, 24;
59:2, 16
**murder** [2] -
37:14; 50:23
**murdered** [2] -
39:24; 44:7
**must** [7] -
56:16, 19,
23, 25; 57:1,
3; 58:9

# N

**named** [2] -
38:4
**names** [1] -
38:5
**narrow** [2] -
8:19; 13:24
**nature** [5] -
33:14; 34:14;

46:15; 50:2;
52:23
**necessarily** [1]
- 54:24
**necessary** [3] -
46:21; 54:9;
55:5
**need** [12] -
9:10; 27:21;
30:6; 43:11;
44:18; 46:24;
47:7, 25;
49:9; 51:1;
57:22; 59:10
**needs** [3] -
4:15; 42:7;
44:18
**negotiations**
[1] - 24:12
**neighborhoo
d** [1] - 50:6
**nephew** [1] -
46:3
**never** [2] -
48:19; 59:6
**new** [2] - 9:15,
17
**next** [4] - 13:1;
21:24; 22:1,
3
**nice** [1] - 43:5
**nights** [1] -
44:12
**nine** [1] - 20:23
**none** [1] -
40:19
**normal** [2] -
4:16; 18:4
**Norman** [1] -
8:14
**Note** [1] -
13:11
**note** [11] -
8:11; 13:24;
14:3, 13;
15:2, 19;
21:20; 23:8;
25:15; 27:4;
52:1
**noted** [5] -
7:24; 27:5;
37:8
**nothing** [1] -
34:17
**notice** [2] -
55:19; 58:9
**November** [1]
- 2:23
**nuances** [1] -
53:15

number [1] -
26:6
**Number** [2] -
6:15, 19
**numbers** [1] -
25:3
**Numbers** [1] -
2:8
**numerous** [1] -
43:25

# O

**object** [2] -
5:6; 26:15
**objection** [7] -
5:13; 12:23;
24:25; 26:4;
27:4; 29:2
**objections** [2]
- 26:14;
27:20
**obligated** [1] -
47:2
**obstruct** [1] -
56:25
**obtained** [1] -
33:7
**obvious** [1] -
39:12
**obviously** [10]
- 7:5, 11;
8:25; 10:11,
23; 25:11;
26:20; 31:8;
37:22; 38:24
**occurred** [5] -
19:9; 33:3;
49:11, 16;
50:24
**OF** [1] - 60:1
**offender** [1] -
7:7
**offense** [39] -
3:14; 5:16,
18, 20;
12:23; 13:3,
13, 17,
23-24; 14:9,
19; 21:19;
25:18, 25;
27:16; 28:3,
5; 29:25;
32:10, 23;
33:9, 12, 14;
34:5, 8;
46:15, 25;
48:5; 49:13;
50:2, 12;
52:23; 54:4;

59:13, 15, 19
**offenses** [4] -
7:9, 13; 9:2,
12
**offer** [1] - 45:2
**offered** [2] -
23:12; 35:10
**offering** [1] -
17:13
**offers** [2] -
24:14, 21
**Office** [2] -
6:24; 26:13
**office** [2] -
24:16; 31:3
**office's** [1] -
10:1
**officer** [10] -
19:15, 24;
20:5, 12-13;
34:24; 56:18,
22; 57:4
**OFFICER** [1] -
59:10
**Officer** [1] -
20:6
**officer's** [1] -
20:11
**officers** [6] -
16:10, 13;
19:11, 14,
17; 20:1
**OFFICIAL** [2] -
60:1, 8
**often** [3] -
30:15; 41:24;
49:17
**old** [6] - 26:10,
19; 27:9;
32:24; 33:4;
45:15
**older** [4] -
33:10; 49:20;
53:5
**once** [1] - 20:6
**one** [35] - 2:25;
3:8, 21; 5:21;
6:14; 11:13;
19:14; 20:18,
20; 23:3;
28:4; 30:6;
35:17; 36:22,
24; 37:20;
38:2, 4,
22-23; 39:8;
40:11; 41:19;
43:24; 44:23;
47:1; 49:11;
52:8, 25;
53:20

**one's** [1] -
28:21
**ones** [2] - 31:9;
45:17
**open** [2] -
18:3; 57:12
**opinion** [6] -
8:9; 12:7, 9;
14:8; 40:14
**opportunities**
[1] - 47:15
**opportunity**
[1] - 11:11
**opposed** [1] -
50:9
**opposite** [1] -
6:10
**Order** [1] - 2:3
**order** [1] -
28:23
**ordinarily** [1] -
22:24
**originally** [1] -
22:19
**outlandish** [2]
- 11:3; 32:12
**outside** [1] -
48:16
**overreach** [1] -
22:18
**overrule** [1] -
12:23
**overruled** [1] -
27:6
**overstate** [1] -
34:8
**own** [3] - 10:7,
10; 42:13

---

**P**

---

**p.m** [1] - 59:24
**Page** [5] -
5:16; 6:7;
8:7; 55:14;
56:15
**page** [1] - 60:4
**Pages** [1] -
56:10
**paid** [1] - 31:21
**pain** [1] - 44:8
**paints** [2] -
40:13; 41:23
**pale** [1] - 11:6
**pandemic** [4] -
41:4, 9; 51:6,
10
**panel** [1] - 8:12
**papers** [1] -
29:12

**Paragraph** [3]
- 7:3; 26:17,
19
**Paragraphs**
[2] - 26:4;
27:8
**paramount** [1]
- 31:9
**paraphernali
a** [1] - 13:14
**parents** [2] -
45:7; 47:23
**parse** [1] -
10:14
**part** [9] - 4:13;
10:6, 21;
29:14; 30:11;
31:15; 32:22,
24; 33:1
**partially** [1] -
24:3
**participant** [1]
- 19:19
**participate** [2]
- 56:16, 20
**participation**
[2] - 56:19,
23
**particular** [5] -
4:12; 8:11;
11:18; 31:13;
58:16
**particularize**
[1] - 50:11
**particularized**
[2] - 47:6, 9
**particularly** [2]
- 31:11; 51:6
**parties** [1] -
35:12
**party** [1] -
39:18
**pass** [1] - 45:9
**passed** [1] -
48:4
**past** [2] -
29:24; 50:21
**Patel** [2] -
8:20; 10:23
**path** [1] -
40:18
**Patrick** [1] -
2:11
**PCP** [1] - 49:2
**penalize** [1] -
36:13
**penalized** [1] -
52:12
**penalizing** [1]
- 52:15

**penalties** [1] -
29:21
**Pennington**
[1] - 54:20
**Penny** [1] -
47:15
**people** [9] -
29:20; 36:14;
39:10; 40:8;
42:23; 51:11;
52:12, 15
**perceive** [1] -
25:6
**perceives** [1] -
32:13
**percent** [1] -
34:2
**Percocets** [1] -
49:2
**period** [2] -
30:2; 50:18
**permit** [1] -
5:10
**person** [12] -
10:20; 19:18;
33:16; 37:14;
38:16,
22-23;
39:23; 41:5;
42:7; 44:3
**personal** [1] -
47:4
**perspective**
[4] - 4:10;
5:14; 24:20;
58:5
**petition** [1] -
3:17
**philosophy** [1]
- 52:12
**photo** [1] -
21:6
**photos** [1] -
20:25
**physical** [1] -
7:10
**picked** [1] -
23:3
**picking** [1] -
58:15
**picture** [4] -
20:22; 21:2,
10; 40:13
**pictures** [1] -
21:13
**place** [2] -
6:20; 41:4
**plain** [4] -
19:15, 24;
20:1, 13

**plainly** [1] -
40:13
**plan** [2] -
44:23; 45:5
**play** [2] - 19:3;
31:9
**played** [2] -
19:8, 11
**plays** [1] -
31:15
**plea** [11] -
4:16; 23:12;
24:12, 14;
34:12; 35:10;
44:1; 46:6;
51:20; 53:21
**plead** [4] -
35:11; 36:24;
51:24; 52:5
**pleading** [1] -
45:3
**pleas** [2] -
24:17; 25:4
**plurality** [1] -
7:8
**point** [15] -
6:25; 7:17;
8:18; 12:16;
16:15, 20;
20:4, 10, 20;
22:21; 24:23;
26:14; 31:1;
50:10
**pointing** [2] -
17:19; 34:24
**points** [16] -
13:11; 26:1,
7, 11; 27:7;
32:9; 33:6-9,
23; 36:21;
51:15; 52:2;
54:5
**poised** [1] -
11:16
**police** [5] -
16:22; 34:16,
19; 35:3;
38:3
**policy** [5] -
24:16; 31:3;
46:6; 51:17;
52:3
**portions** [1] -
12:10
**position** [13] -
7:1; 10:1;
15:23; 17:10;
24:2; 26:9;
31:8; 38:16;
44:19; 46:14;

51:21
**possess** [4] -
3:1; 35:18;
57:1
**possessed** [8]
- 13:21;
14:19; 16:4;
21:17; 23:4;
33:25; 35:15
**possessing**
[6] - 24:5,
8-9; 36:1
**possession**
[14] - 3:2, 6,
13; 13:2;
16:5; 22:4, 6;
28:5; 30:1;
32:23; 50:13;
54:10, 12
**possibly** [1] -
3:25; 10:22
**post** [1] - 16:8
**post-trial** [1] -
16:8
**potential** [2] -
13:16; 50:7
**potentially** [1]
- 11:2
**practiced** [1] -
38:14
**precedent** [12]
- 7:11, 19;
8:17; 11:8,
17, 21; 12:2,
18; 14:4;
15:21; 26:22;
27:3
**precise** [1] -
35:1
**precisely** [1] -
28:16
**preclude** [2] -
57:19, 23
**predates** [1] -
10:3
**preliminary** [1]
- 28:23
**prepared** [1] -
4:2
**preponderan
ce** [2] - 15:25;
22:5
**prescription**
[4] - 57:2
**presence** [2] -
13:16; 47:12
**present** [4] -
2:15; 14:2, 6,
20
**presented** [4] -

8:16, 23;
9:24; 16:9
**Presentence**
[1] - 4:20
**presentence**
[12] - 3:11;
5:8, 17; 7:3;
38:19; 41:22;
47:11; 48:24;
49:7; 55:12;
56:10
**presenting** [1]
- 18:6
**presents** [1] -
32:12
**preserve** [4] -
22:14; 51:24;
52:5; 57:18
**preserved** [2] -
12:19; 27:21
**pretrial** [3] -
41:12; 42:11;
51:5
**pretty** [7] -
7:18; 21:13;
25:23; 40:13;
48:20; 51:17;
52:8
**primarily** [3] -
22:13; 54:16;
57:17
**primary** [2] -
39:7; 42:4
**prison** [1] -
50:4
**Prisons** [2] -
58:11, 16
**Probation** [1] -
26:13
**PROBATION**
[1] - 59:10
**probation** [4] -
56:18, 22;
57:4; 59:8
**problem** [1] -
49:1
**proceed** [1] -
22:13
**proceeding** [5]
- 6:14,
16-17; 8:20;
46:6
**proceedings**
[3] - 6:8;
59:24; 60:4
**produce** [1] -
29:23
**produced** [1] -
20:16
**Professional**

[1] - 60:2
**profound** [1] - 50:25
**program** [10] - 48:10; 56:16, 19-21, 23; 58:16, 18, 25
**programming** [2] - 48:3; 51:9
**programs** [3] - 45:2; 48:8; 58:22
**prohibited** [1] - 56:25
**promote** [1] - 46:24
**prong** [1] - 11:11
**proof** [4] - 16:4; 25:11; 34:11; 37:17
**property** [3] - 10:19; 11:1; 35:2
**proposition** [2] - 8:14
**protect** [2] - 42:5; 46:25
**protecting** [2] - 31:14; 42:8
**protection** [1] - 46:25
**prove** [2] - 17:14; 18:11
**provide** [1] - 27:24
**provided** [1] - 9:25
**provider** [2] - 56:18, 21
**provides** [1] - 13:20
**proving** [1] - 35:23
**provision** [1] - 7:6
**proximate** [1] - 42:15
**proximity** [2] - 13:13; 21:20
**prudent** [1] - 12:16
**psychic** [1] - 51:11
**Public** [1] - 6:24
**public** [5] - 42:5, 7; 46:25; 47:1;

53:3
**published** [2] - 8:9; 14:7
**punish** [3] - 36:19; 46:24; 54:24
**punishable** [2] - 3:7; 28:3
**punished** [1] - 36:9
**punishing** [3] - 36:6, 8, 21
**punishment** [2] - 35:11; 50:13
**purpose** [2] - 10:19
**purses** [1] - 16:16
**pursuant** [2] - 53:21; 60:3
**pursue** [1] - 44:23
**put** [12] - 15:15; 25:10, 16; 26:13; 29:12; 34:10; 35:21; 36:10, 15; 44:13, 19; 55:19
**puts** [1] - 26:2
**putting** [1] - 48:11

**Q**

**qualifies** [1] - 5:23
**questions** [1] - 56:12
**quite** [3] - 47:18; 49:15; 50:12
**quitely** [1] - 43:1

**R**

**rail** [1] - 20:10
**raise** [1] - 36:24
**raised** [2] - 8:17; 47:13
**ran** [1] - 16:20
**range** [3] - 28:10; 31:19; 32:8
**rare** [1] - 38:6
**rate** [1] - 49:21
**rather** [3] -

35:22; 36:5; 37:3
**RDB-10-665** [1] - 6:19
**rea** [1] - 8:21
**reached** [1] - 42:12
**read** [10] - 5:2; 12:9; 16:3; 21:22; 25:14; 36:3
**reading** [1] - 21:21
**ready** [3] - 17:10; 39:16; 41:17
**reaffirmed** [1] - 27:1
**real** [2] - 37:24
**reality** [2] - 11:6; 40:18
**realization** [1] - 40:1
**realize** [6] - 15:24; 16:1; 24:13; 30:22; 40:12; 51:12
**really** [21] - 12:17; 20:8; 22:22; 26:25; 30:4; 34:7; 38:17; 40:25; 41:18; 48:15, 18; 50:19; 51:8, 16, 23; 54:6, 23; 58:15; 59:5
**reason** [6] - 22:3; 31:18; 32:14; 34:13; 39:12
**reasonable** [1] - 15:25; 32:13; 35:24
**reasons** [10] - 11:7; 41:22; 42:1, 16; 51:13; 52:17, 20; 53:11; 54:8; 57:14
**rebuilding** [1] - 44:13
**receive** [1] - 26:10
**received** [2] - 38:11; 42:16
**receiving** [1] - 49:6
**recent** [2] - 6:8, 17

**recently** [4] - 3:16; 21:22; 50:16; 54:23
**recidivism** [2] - 31:12; 49:7
**recidivous** [1] - 31:11
**reckless** [6] - 7:9, 20, 25; 8:2; 9:10; 33:13
**recklessly** [3] - 9:19; 10:23; 29:19
**recklessness** [1] - 10:21
**recognize** [1] - 26:25
**recognizing** [1] - 26:23
**recommend** [5] - 31:1; 58:19; 59:1, 17
**recommendations** [1] - 58:11
**recommended** [1] - 56:15
**record** [10] - 5:2; 7:1; 17:25; 18:2; 23:1; 33:16; 40:13; 55:15; 57:18
**records** [1] - 33:19
**recover** [1] - 20:12
**recovers** [1] - 20:14
**redacted** [4] - 6:6; 7:18; 12:9, 12
**reduce** [1] - 51:15
**reduced** [1] - 52:4
**reference** [1] - 6:12
**referenced** [1] - 6:13
**reflect** [3] - 52:23
**reflecting** [1] - 44:12
**reflects** [1] - 55:6
**refuse** [1] -

44:3
**regard** [1] - 24:12
**Registered** [1] - 60:2
**regulations** [3] - 56:17, 21; 60:5
**reject** [1] - 38:10
**rejected** [4] - 22:21; 23:13; 24:14, 19
**related** [2] - 22:16; 26:4
**relation** [1] - 46:1
**release** [26] - 2:10; 3:15, 17, 21; 4:1, 3, 8; 6:20; 28:1, 13; 30:2, 16; 37:12; 50:4; 52:19; 54:14, 16; 55:4, 7-8, 10-11; 56:7, 15; 59:12, 18
**released** [4] - 40:4; 50:5; 53:4; 54:1
**relevant** [2] - 12:9; 28:19
**relied** [3] - 8:7; 52:1; 57:16
**relieve** [1] - 11:1
**relying** [3] - 6:2, 4; 18:5
**remarkable** [1] - 47:20
**remarks** [1] - 42:19
**remember** [1] - 35:1
**reminded** [1] - 54:23
**removed** [1] - 21:11
**reoffending** [1] - 32:9
**repeat** [1] - 9:21
**repeatedly** [1] - 37:13
**Report** [1] - 4:20
**report** [12] - 3:11; 5:8, 17;

7:3; 38:19; 41:22; 47:11; 48:24; 49:7; 55:12; 56:10
**reported** [1] - 60:4
**reporter** [2] - 14:15; 43:18
**REPORTER** [2] - 60:1, 8
**Reporter** [1] - 60:2
**request** [1] - 37:10
**requesting** [1] - 28:21
**required** [1] - 9:10
**requirement** [2] - 14:4, 18
**requires** [2] - 40:20; 46:19
**reserve** [1] - 44:1
**respect** [2] - 38:7; 46:24
**respectively** [1] - 26:10
**respects** [1] - 33:6
**responding** [3] - 14:12; 19:15; 26:12
**responds** [1] - 20:22
**response** [3] - 13:10, 18; 26:13
**responsibilities** [1] - 51:2
**responsibility** [13] - 22:9; 23:6, 15; 24:3, 11; 25:13, 19; 31:6; 32:18; 45:24; 51:14; 52:14
**restitution** [1] - 28:22
**result** [1] - 39:21
**results** [1] - 27:14
**retired** [1] - 2:23
**review** [3] - 55:16, 20; 56:1
**reviewed** [6] -

4:20; 12:9; 55:17, 21; 56:3
**revocation** [2] - 4:13; 54:15
**revoke** [1] - 4:8
**rewarded** [1] - 24:7
**rewarding** [1] - 36:7
**rights** [3] - 31:4; 44:1; 58:7
**ring** [2] - 41:24
**rings** [1] - 40:24
**rise** [2] - 4:6; 59:22
**robbery** [26] - 5:21; 6:2; 7:3, 20, 22; 8:3, 22, 25; 9:7, 11, 17; 10:5, 22; 11:4, 9; 12:4, 7, 20, 25; 26:17; 32:24; 33:2; 54:5
**room** [2] - 38:16; 44:18
**Roper** [1] - 26:22
**round** [1] - 17:2
**routine** [1] - 18:5
**RPR** [1] - 60:8
**Rule** [1] - 22:20
**rule** [1] - 30:19
**ruled** [2] - 12:11; 35:6
**rules** [2] - 56:17, 21
**ruling** [4] - 23:9; 34:14; 35:1, 4
**run** [5] - 38:3; 47:17; 54:11, 13; 55:9
**running** [2] - 16:12; 20:8
**runs** [1] - 10:24

**S**

**sad** [2] - 40:4, 18

**sanction** [1] - 54:16
**sat** [2] - 43:1, 13
**satchel** [2] - 16:23; 50:9
**satchels** [1] - 16:16
**satisfied** [3] - 14:5, 20; 35:23
**satisfy** [1] - 8:4
**saw** [3] - 19:25; 34:12; 38:19
**scale** [1] - 17:1
**scores** [1] - 30:14
**search** [1] - 51:19
**seat** [1] - 2:5
**second** [6] - 16:14, 22; 20:12; 26:18; 37:7; 57:22
**Second** [1] - 2:24
**second-degree** [1] - 26:18
**second-story** [1] - 16:14
**seconds** [2] - 19:1, 12
**Section** [2] - 28:11; 46:19
**see** [25] - 2:17, 20; 3:14; 5:6; 7:14; 16:9; 17:23; 18:18; 20:7; 21:2, 7; 22:1; 26:16; 32:18; 34:16; 35:7; 38:6; 39:20; 40:8; 48:2, 8, 17; 52:8; 59:6
**seem** [3] - 33:22; 41:18
**sees** [1] - 35:12
**seizure** [1] - 35:3
**self** [1] - 44:12
**self-reflecting** [1] - 44:12
**send** [2] - 30:23; 31:11
**sends** [1] -

20:21
**sent** [1] - 20:18
**sentence** [30] - 28:20; 29:15, 23; 30:10, 17, 25; 31:2, 18; 32:13; 36:16; 37:25; 38:10, 12; 42:15; 47:8; 49:8; 51:5, 13; 52:4, 17; 53:11, 20; 54:8, 15; 55:9; 57:19, 24-25; 59:18
**sentenced** [3] - 4:9; 37:16; 38:24
**sentences** [2] - 30:16; 37:23
**Sentencing** [4] - 5:19; 13:7; 14:22; 22:12
**sentencing** [16] - 2:9, 15; 6:8, 16; 18:2, 6; 26:15; 28:2; 37:8; 46:6, 11, 21-22; 47:5, 8; 53:12
**separate** [1] - 10:14
**separated** [1] - 17:1
**serious** [4] - 48:25; 49:10; 50:12; 53:19
**seriousness** [3] - 50:2, 12; 54:18
**set** [2] - 7:18; 29:19
**sets** [1] - 10:23
**setting** [1] - 41:12
**several** [1] - 23:12
**shaking** [1] - 48:17
**share** [1] - 31:7
**shared** [1] - 45:10
**shirt** [1] - 20:13
**shoot** [1] - 33:25

**shooting** [3] - 19:19, 22; 34:20
**shot** [1] - 34:20
**shoulder** [1] - 16:17
**show** [3] - 15:17; 45:8; 49:20
**showed** [2] - 16:11; 21:5
**showing** [1] - 53:23
**siblings** [1] - 45:5
**sic** [1] - 39:20
**sick** [4] - 44:8; 45:6
**side** [1] - 6:10
**signal** [1] - 30:23
**significant** [2] - 53:9, 19
**significantly** [1] - 50:16
**signs** [1] - 49:3
**similar** [3] - 12:15; 46:23; 53:25
**similarly** [2] - 38:6; 53:12
**simply** [1] - 36:24
**single** [3] - 33:17; 35:24; 44:20
**sister** [5] - 2:19; 5:4; 40:10; 45:10; 47:19
**sister's** [1] - 45:12
**sisters** [1] - 47:13
**sit** [1] - 43:14
**sits** [1] - 42:7
**situated** [2] - 38:7; 53:12
**situation** [3] - 41:20; 45:21; 51:17
**situation's** [1] - 39:22
**six** [4] - 29:15; 42:9; 53:21; 54:11
**six-year** [1] - 53:21
**skill** [1] - 40:5

**slowly** [2] - 14:15; 43:18
**snippet** [1] - 34:12
**society** [1] - 44:10
**someone** [13] - 10:15, 17, 24; 19:21; 23:14; 32:7; 36:6-8; 40:24; 42:8; 53:3
**somewhat** [2] - 39:12
**sorry** [7] - 21:7; 26:3; 39:25; 43:20; 45:14; 48:21
**sort** [19] - 6:11; 7:12, 22; 8:18, 21; 9:3, 6; 10:18; 11:6; 14:5; 22:3; 32:15; 36:6; 37:8; 40:6; 41:14, 16; 47:20; 51:4
**sound** [1] - 57:15
**sounds** [1] - 49:4
**speaking** [1] - 46:17
**special** [3] - 29:4; 56:7; 57:5
**specific** [7] - 8:11, 19; 10:16, 19; 30:6, 9
**specifically** [3] - 15:11; 26:13; 31:13
**spend** [2] - 41:3; 51:8
**spent** [2] - 44:9; 48:15
**stairwell** [1] - 16:15
**stand** [3] - 37:9, 20
**standard** [2] - 15:24; 56:4
**standing** [2] - 8:15; 37:15
**stands** [1] - 59:22
**start** [5] - 5:7,

16; 32:20; 47:4, 10
**started** [5] - 16:12; 19:12; 20:8; 46:11; 47:18
**starting** [3] - 24:23; 31:1; 34:7
**state** [9] - 3:22; 5:2; 7:1, 21; 10:12; 13:12; 22:25; 27:3; 57:18
**statement** [1] - 29:9
**statements** [1] - 37:18
**States** [19] - 2:7, 11; 5:18; 6:15, 18; 7:15; 8:14; 12:2; 13:7; 14:7, 17, 22; 22:12; 26:15; 36:17; 46:18; 54:19; 60:2, 5
**states** [1] - 9:9
**station** [3] - 21:12; 39:20
**statistics** [2] - 39:10; 49:20
**statute** [2] - 10:11; 46:18
**statutory** [3] - 28:12, 14; 55:2
**stenographically** [1] - 60:4
**stenographically-reported** [1] - 60:4
**step** [2] - 10:11; 18:21
**stick** [1] - 11:21
**still** [6] - 10:5; 20:10; 24:3, 7; 37:9; 49:17
**stipulate** [1] - 24:18
**stipulated** [5] - 3:8; 23:18; 24:9, 18; 52:7
**stipulation** [2] - 4:5; 23:2

**stop** [1] - 16:11
**story** [1] - 16:14
**strap** [1] - 16:17
**street** [5] - 34:17; 38:2; 39:15, 17
**streets** [2] - 45:16; 48:7
**stress** [1] - 51:9
**strong** [1] - 51:13
**struck** [2] - 48:15, 24
**structure** [1] - 53:25
**submission** [5] - 5:3, 6; 24:1; 47:11
**submit** [3] - 32:6; 42:6; 56:23
**subscribe** [1] - 52:11
**subsequent** [1] - 30:24
**subset** [1] - 13:24
**substance** [5] - 3:3; 56:20, 24-25; 57:2
**substances** [2] - 3:2; 28:5
**sufficient** [3] - 46:20; 54:9; 55:5
**suggest** [3] - 31:18; 37:25; 42:15
**summer** [1] - 6:3
**super** [1] - 52:14
**Superseding** [1] - 2:24
**supervise** [3] - 56:19, 22
**supervised** [23] - 2:10; 3:15, 17, 21; 4:1, 3, 8; 6:20; 28:1, 13; 30:16; 37:12; 52:19; 54:14; 55:4, 7, 10-11; 56:7, 15;

59:12, 18
**supervision** [3] - 4:8; 30:18; 59:17
**supplementing** [1] - 29:12
**support** [7] - 15:16; 32:13; 40:9; 44:24; 52:25; 53:7, 22
**suppose** [2] - 18:23; 37:15
**suppress** [3] - 22:14; 23:10; 51:19
**Supreme** [6] - 6:5; 7:8, 19; 10:7; 26:22; 27:1
**survey** [1] - 9:4
**sustained** [1] - 29:25
**switch** [1] - 40:15
**switches** [1] - 20:21
**system** [3] - 26:23; 31:12; 44:24

**T**

**table** [1] - 2:14
**tamper** [1] - 57:1
**taser** [1] - 34:24
**teenager** [1] - 49:16
**term** [2] - 3:8; 28:4
**termination** [1] - 59:17
**terms** [1] - 3:20; 8:19, 22; 9:2, 10; 11:2, 9; 18:6; 26:18; 29:23; 30:15, 24; 31:5, 10; 36:16; 37:5
**Tesst** [1] - 47:16
**testified** [1] - 19:11
**testimony** [1] - 35:21
**testing** [2] - 56:24; 57:1

**text** [5] - 15:3, 20; 20:17; 26:6, 20

**THE** [112] - 2:4, 12, 16, 20; 3:6, 11; 4:4, 13, 17, 19; 5:1, 13; 6:1; 9:5, 13; 11:24; 12:1; 14:10, 14, 24; 15:4, 7, 13, 22; 17:12, 16, 22; 18:10, 13, 16, 19, 23, 25; 19:2, 7, 21; 20:3; 21:2, 7, 14, 16; 23:24; 25:3, 6, 9, 14; 26:9; 27:5, 18, 25; 28:10, 17, 19; 29:1, 4, 9; 30:8; 31:23; 32:1, 4; 33:11; 36:25; 38:6; 42:20, 22-23, 25; 43:1, 6, 8, 10-11, 14, 16, 18, 20-22; 45:25; 46:3, 9; 49:25; 50:1; 55:14, 18, 21, 24; 56:3, 6, 8-9, 11-14; 57:10, 24; 58:4, 8, 14, 19, 22, 25; 59:3, 7, 9, 14, 20, 22

**themselves** [1] - 40:18

**theories** [1] - 22:16

**theory** [1] - 22:21

**therefore** [1] - 55:20

**they've** [2] - 6:10; 20:8

**thinking** [1] - 50:21

**thinks** [1] - 12:19

**thorough** [3] - 6:6; 9:3; 23:9

**thoroughly** [2] - 7:18; 16:8

**thoughtful** [1] - 23:9

**thrashing** [1] - 39:5

**threat** [1] - 10:17

**three** [11] - 26:11; 33:7-9; 37:25; 38:25; 44:5; 47:13; 49:10; 59:12, 14

**threw** [3] - 16:23; 20:11; 22:19

**throughout** [1] - 27:2

**throwing** [1] - 29:19

**thrust** [1] - 38:9

**tight** [1] - 21:13

**tired** [4] - 44:8; 45:6

**Title** [1] - 46:18

**today** [11] - 4:9; 18:11; 39:8; 40:24; 42:7, 13, 24; 44:3; 50:20; 52:24; 53:8

**together** [1] - 45:13

**toll** [1] - 51:11

**took** [5] - 6:20; 21:10, 13; 48:3; 53:7

**top** [1] - 36:23

**tossed** [1] - 35:3

**total** [3] - 25:25; 29:5; 55:9

**totality** [2] - 37:2

**touched** [1] - 21:9

**tough** [1] - 45:1

**trade** [1] - 40:7

**trafficking** [4] - 3:13; 13:12; 24:6; 35:18

**tragic** [1] -

50:24

**transcript** [2] - 60:3

**transcripts** [4] - 6:12, 22; 9:25; 12:10

**transferred** [2] - 2:22; 3:15

**transpired** [1] - 44:4

**trauma** [1] - 41:10

**treatment** [4] - 51:9; 56:16, 18, 20

**tremendousl y** [1] - 44:6

**trial** [38] - 16:8, 10; 17:16, 19, 25; 18:6; 19:5, 10; 20:17; 22:13, 15; 23:1; 24:18, 21; 25:11, 16; 31:3, 6; 34:10, 13; 35:14; 36:4, 6, 8-9, 11-12, 14-15, 20; 37:6; 39:2; 41:13; 51:23; 52:13, 15

**Trial** [1] - 21:4

**tricky** [1] - 30:11

**tried** [2] - 26:24; 43:25

**trigger** [1] - 17:4

**troubling** [1] - 50:3

**true** [2] - 41:25; 60:3

**trust** [1] - 17:17; 21:22; 54:17, 24; 55:6; 58:6

**try** [1] - 49:8

**trying** [2] - 16:13; 25:7

**turn** [3] - 4:19; 54:14; 55:12

**twin** [5] - 2:18; 40:10; 45:13; 47:14, 21

**twins** [1] - 45:11

**two** [22] - 5:20;

6:8; 12:10; 19:14; 22:11, 19; 23:10, 21; 25:18; 28:12; 35:17; 36:22; 37:21; 38:1; 39:6, 13, 15; 40:2; 46:10; 51:7, 15

**two-level** [3] - 22:11; 23:21; 25:18

**type** [1] - 44:13

**U**

**U.S.C** [1] - 60:3

**ultimate** [2] - 26:7; 42:19

**ultimately** [1] - 34:25

**unable** [1] - 51:14

**unbelievably** [1] - 50:24

**unchanged** [1] - 24:3

**under** [24] - 4:15; 5:18; 7:2, 10-11, 13, 15; 8:3; 10:5; 11:10; 12:5, 7, 21; 13:7; 22:12; 23:23; 25:13, 20; 27:10; 28:2, 11; 30:17; 51:9, 14

**underlying** [3] - 33:18, 21; 54:18

**understated** [1] - 51:10

**understatem ent** [1] - 9:5

**undiagnosed** [1] - 49:4

**unfortunately** [1] - 53:22

**uniform** [1] - 19:17

**unique** [3] - 38:16; 51:17; 53:14

**United** [19] - 2:7, 11; 5:18; 6:15, 18;

7:15; 8:14; 12:2; 13:7; 14:6, 17, 22; 22:12; 26:15; 36:17; 46:18; 54:19; 60:2, 5

**unless** [2] - 3:24; 4:11

**unloaded** [1] - 17:7

**unpublished** [3] - 8:10; 10:4; 12:6

**unwarranted** [3] - 38:12; 53:11; 54:1

**up** [21] - 10:23, 25; 11:2, 13-14; 14:16, 22; 18:22; 20:9; 23:3; 32:10; 33:22; 40:8; 41:17; 44:12; 45:7, 12, 21; 48:5; 52:20

**US** [1] - 52:3

**V**

**valid** [3] - 11:10; 57:2

**value** [1] - 10:15

**variant** [1] - 57:25

**variety** [2] - 46:16, 19

**versus** [10] - 2:7; 6:15, 19; 7:15; 8:14; 12:2; 14:7, 18; 36:17; 54:19

**VI** [8] - 26:2, 8; 27:22; 28:7; 33:1, 22; 34:4

**victims** [2] - 29:6, 8

**video** [4] - 16:9; 19:8, 12; 20:15

**view** [3] - 41:23; 49:3

**violate** [2] - 3:20, 22

**violated** [2] - 4:8; 55:7

**violation** [15] - 2:10; 3:23, 25; 4:3, 9; 6:20; 27:19; 28:1; 50:14; 52:19; 54:14, 18; 55:4; 59:11

**violator** [1] - 54:19

**violence** [12] - 5:24; 7:4, 6; 8:5; 9:1, 19; 10:6, 10; 11:10; 12:7, 21; 50:7

**violent** [6] - 7:10, 13-14; 12:5; 33:16; 49:21

**virtually** [2] - 53:14, 16

**virtue** [1] - 54:5

**vocational** [2] - 47:25; 58:16

**W**

**walk** [1] - 20:23

**walked** [2] - 38:1; 46:1

**walking** [2] - 19:16; 34:17

**Walton** [4] - 6:5; 7:18, 21; 12:14

**Walton's** [1] - 9:3

**wants** [6] - 4:11; 5:11; 35:7; 40:2; 48:18

**warranted** [2] - 13:15; 38:1

**water** [1] - 18:24

**ways** [2] - 30:13; 32:6

**weaker** [2] - 17:9

**wearing** [2] - 19:23; 20:6

**weed** [2] - 38:2

**week** [1] - 19:25

**weeks** [2] - 29:15; 50:3

**welcome** [1] - 46:4

**Wells** [1] - 6:19

**Westlaw** [1] - 54:20

**whichever** [1] - 40:15

**whole** [1] - 44:20

**wholly** [1] - 22:21

**willing** [5] - 36:23; 44:25; 45:1; 52:5; 57:17

**willingness** [1] - 32:17; 51:22

**window** [1] - 38:17

**wiser** [1] - 11:21

**wish** [2] - 29:6; 59:5

**women** [1] - 39:19

**woodline** [1] - 16:21

**word** [1] - 17:13

**words** [4] - 39:8; 40:21; 42:14

**world** [2] - 39:23; 44:5

**worn** [1] - 16:10

**worry** [1] - 53:2

**worst** [1] - 41:4

**write** [1] - 53:7

**written** [1] - 25:21

**wrote** [1] - 43:6

**Y**

**year** [4] - 3:8; 12:6; 28:4; 53:21

**years** [22] - 26:10, 19; 27:2, 9; 28:12; 32:24; 33:4; 37:10, 20-21; 38:25; 42:10; 44:5; 46:10;

Sentencing 3/9/23

50:17, 21;
53:20; 55:10;
59:13
**young** [1] -
47:18
**yourself** [1] -
51:2

**§**

**§** [1] - 60:3